COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss

HOUSING COURT DEPT.
BOSTON HOUSING COURT
DOCKET NO.: 09H84CV00162

ALANA WALDHOLZ INDIVIDUALLY AND
AS NATURAL PARENT AND NEXT FRIEND
OF DOMENIK ROBINSON, JA-SHON
OLIVER AND JA-ROD MCCLANAHAN,
        Plaintiffs,

v.

WILSHIRE CREDIT CORPORATION AS
ATTORNEY IN FACT FOR LASALLE BANK
N.A., AS TRUSTEE FOR THE MLMI TRUST
SERIES 2006-MLN1; et al.,
        Defendants.

Edward Rice
Volunteer Lawyers Project
99 Chauncy Street #400
Boston, MA 02111 (M)

Shiva Karimi, Esq.
Karimi & Associates, PC
268 Summer Street, Lower Level
Boston, MA 02110-1108 (M)

## NOTICE OF FILING OF NOTICE OF REMOVAL TO FEDERAL COURT

PLEASE TAKE NOTICE that defendant BAC Home Loans Servicing, L.P. as successor-by-merger to Wilshire Credit Corporation as attorney in fact for LaSalle Bank N.A., as Trustee for the MLMI Trust Series 2006-MLN1 has, on the 14th day of March 2011, filed a Notice of Removal regarding the above-captioned action in the Office of the Clerk of the United States District Court for the District of Massachusetts in Boston, Massachusetts. A copy is attached as Exhibit A.

{RCD0047.DOC}

Respectfully submitted,

BAC HOME LOANS SERVICING, L.P. AS
SUCCESSOR-BY-MERGER TO WILSHIRE
CREDIT CORPORATION AS ATTORNEY
IN FACT FOR LASALLE BANK, N.A. AS
TRUSTEE FOR THE MLMI TRUST SERIES
2006-MLN1,

By its attorneys,

MICHIENZIE & SAWIN, LLC,

/s/ RC Demerle

Richard C. Demerle (BBO#652242)
Christopher J. DeCosta (BBO#657527)
Paul Michienzie (BBO#548701)
745 Boylston Street
Boston, MA 02116
(617) 227-5660
RDemerle@masatlaw.com

DATE:  March 14, 2011

{RCD0047.DOC}                                    2

# Exhibit A

Notice of Removal

℀JS 44  (Rev. 12/07)
# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Alana Waldholz Individually and as Natural Parent and Next Friend of Domenik Robinson, JA-Shon Oliver and JA-Rod McClanahan

**DEFENDANTS**
Wilshire Credit Corporation as Attorney In Fact for LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-MLN1, et al.

**(b)** County of Residence of First Listed Plaintiff  Suffolk
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Travis County, TX
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Edward Rice, Volunteer Lawyers Project
99 Chauncy St., Boston, MA 02111

Attorneys (If Known)
Richard C. Demerle, Michienzie & Sawin LLC
745 Boylston St., Boston, MA 02116 (617-227-566

## II. BASIS OF JURISDICTION  (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT  (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |

**CONTRACT**
☐ 110 Insurance
☐ 120 Marine
☐ 130 Miller Act
☐ 140 Negotiable Instrument
☐ 150 Recovery of Overpayment & Enforcement of Judgment
☐ 151 Medicare Act
☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
☐ 153 Recovery of Overpayment of Veteran's Benefits
☐ 160 Stockholders' Suits
☐ 190 Other Contract
☒ 195 Contract Product Liability
☐ 196 Franchise

**REAL PROPERTY**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**TORTS**
**PERSONAL INJURY**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers' Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☒ 360 Other Personal Injury

**CIVIL RIGHTS**
☐ 441 Voting
☐ 442 Employment
☐ 443 Housing/ Accommodations
☐ 444 Welfare
☐ 445 Amer. w/Disabilities - Employment
☐ 446 Amer. w/Disabilities - Other
☐ 440 Other Civil Rights

**PERSONAL INJURY**
☐ 362 Personal Injury - Med. Malpractice
☐ 365 Personal Injury - Product Liability
☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
☐ 510 Motions to Vacate Sentence
**Habeas Corpus:**
☐ 530 General
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**FORFEITURE/PENALTY**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 R.R. & Truck
☐ 650 Airline Regs.
☐ 660 Occupational Safety/Health
☐ 690 Other

**LABOR**
☐ 710 Fair Labor Standards Act
☐ 720 Labor/Mgmt. Relations
☐ 730 Labor/Mgmt.Reporting & Disclosure Act
☐ 740 Railway Labor Act
☐ 790 Other Labor Litigation
☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
☐ 462 Naturalization Application
☐ 463 Habeas Corpus - Alien Detainee
☐ 465 Other Immigration Actions

**BANKRUPTCY**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**SOCIAL SECURITY**
☐ 861 HIA (1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g))
☐ 864 SSID Title XVI
☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
☐ 870 Taxes (U.S. Plaintiff or Defendant)
☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
☐ 400 State Reapportionment
☐ 410 Antitrust
☐ 430 Banks and Banking
☐ 450 Commerce
☐ 460 Deportation
☐ 470 Racketeer Influenced and Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Sat TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 890 Other Statutory Actions
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 895 Freedom of Information Act
☐ 900Appeal of Fee Determination Under Equal Access to Justice
☐ 950 Constitutionality of State Statutes

## V. ORIGIN  (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity)
28USC, Section 1332.
Brief description of cause:
Failure to maintain premises in good repair.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE
DOCKET NUMBER

DATE
03/14/2011

SIGNATURE OF ATTORNEY OF RECORD
*R.C. Demerle*

**FOR OFFICE USE ONLY**

RECEIPT #          AMOUNT          APPLYING IFP          JUDGE          MAG. JUDGE

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALANA WALDHOLZ INDIVIDUALLY AND AS NATURAL PARENT AND NEXT FRIEND OF DOMENIK ROBINSON, JA-SHON OLIVER AND JA-ROD MCCLANAHAN,<br>        Plaintiffs,<br><br>v.<br><br>WILSHIRE CREDIT CORPORATION AS ATTORNEY IN FACT FOR LASALLE BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-MLN1; WILSHIRE CREDIT CORPORATION AS ATTORNEY IN FACT FOR LASALLE BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-MLN1, TRUSTEE OF THE 11 ROXTON STREET CONDOMINIUM; U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF10; and U.S. BANK NATIONAL ASSOCIATION AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF10, TRUSTEE OF THE 11 ROXTON STREET CONDOMINIUM,<br>        Defendants. | Civil Action No. |

## NOTICE OF REMOVAL

PURSUANT TO 28 U.S.C. §§ 1332, 1441 and 1446, BAC Home Loans Servicing,

L.P. as successor-by-merger to defendant Wilshire Credit Corporation, as defined

below, hereby removes the above-captioned action, originally filed in the Boston

Housing Court, to the U.S. District Court for the District of Massachusetts.

{RCD0048.DOC}

## Statement of Grounds for Removal

1.      Plaintiffs Alana Waldholz, Domenik Robinson, Ja-Shon Oliver and Ja-Rod McClanahan (together, the "**Plaintiffs**") are Massachusetts residents and individuals who formerly resided at 11 Roxton Street, Unit 1, Dorchester, Suffolk County, Massachusetts (the "**Property**").

2.      Wilshire Credit Corporation as Attorney in Fact for LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1 ("**Wilshire**") is a defendant in the above-captioned action.

3.      BAC Home Loans Servicing, L.P. ("**BAC**") is the successor-by-merger to Wilshire.  BAC is a limited partnership organized under the laws of the state of Texas.

4.      Wilshire is the former loan servicer for the former owner of the Property, LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1.

5.      On or about February 25, 2009, the Plaintiffs filed a complaint with the Boston Housing Court for the Commonwealth of Massachusetts (the "**Housing Court**"), alleging several causes of action against Wilshire, civil action no. 09H84-CV-00162 (the "**Complaint**").  A copy of the Complaint, without exhibits, is attached as Exhibit 1.

6.      In her demand letter that preceded the filing of the Complaint, plaintiff Alana Waldholz demanded the sum of $321,131.50 to settle the causes of action that she and the other plaintiffs now allege against Wilshire.

7.      On March 12, 2009, Wilshire removed the above-captioned action to the U.S. District Court for the District of Massachusetts (the "**District Court**").

8.      On April 13, 2009, the District Court (Saris, J.) allowed the Plaintiffs'
motion to amend the Complaint to add several defendants (the "**Amended
Complaint**").  A copy of the Amended Complaint is attached as <u>Exhibit 2</u>.

9.      The additional defendants included Massachusetts' residents Sirewl Cox
and Sabrina Gordon (the "**Massachusetts Defendants**").

10.     The addition of the Massachusetts Defendants eliminated diversity
jurisdiction, necessitating a remand of the action to the Housing Court.

11.     Pursuant to the tracking order of the Housing Court, the Plaintiffs were
supposed to serve the Amended Complaint on the Massachusetts Defendants no later
than June 23, 2009.

12.     On March 1, 2010, BAC succeeded Wilshire by merger.

13.     On August 31, 2010, the Housing Court ordered the Plaintiffs to file
returns of service as to the Massachusetts Defendants no later than October 1, 2010.

14.     On or after February 12, 2011, BAC received an order of the Housing
Court dismissing the Amended Complaint as to the Massachusetts Defendants (the
"**Order**").  A copy of the Order is attached as <u>Exhibit 3</u>.

### Jurisdiction

15.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 in that the
Plaintiffs and the Defendants are citizens of different states and the amount in
controversy, exclusive of interest and costs, exceeds the sum or value of $75,0000.00.

16.     Removal is timely as, on or after February 12, 2011, Wilshire received a copy of the Housing Court's order dismissing the Massachusetts Defendants, re-establishing diversity between the Plaintiffs and the defendants.

17.     Pursuant to the Local Rules for the District Court, within thirty (30) days after the filing of this notice of removal, BAC as successor-by-merger to Wilshire shall file with the District Court certified or attested copies of all records and proceedings in the Housing Court and a certified or attested copy of all docket entries in the Housing Court. Local Rule 81.1.

Respectfully submitted,

BAC HOME LOANS SERVICING, L.P. AS SUCCESSOR-BY-MERGER TO WILSHIRE CREDIT CORPORATION AS ATTORNEY IN FACT FOR LASALLE BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-MLN1,

By its attorneys,

MICHIENZIE & SAWIN, LLC,

/s/ Richard C. Demerle
Paul Michienzie (BBO#548701)
Richard C. Demerle (BBO#652242)
745 Boylston Street
Boston, MA 02116
(617) 227-5660
RDemerle@masatlaw.com

DATE: March 14, 2011

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALANA WALDHOLZ INDIVIDUALLY AND AS NATURAL PARENT AND NEXT FRIEND OF DOMENIK ROBINSON, JA-SHON OLIVER AND JA-ROD MCCLANAHAN,<br>      Plaintiffs,<br><br>v.<br><br>WILSHIRE CREDIT CORPORATION AS ATTORNEY IN FACT FOR LASALLE BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-MLN1; WILSHIRE CREDIT CORPORATION AS ATTORNEY IN FACT FOR LASALLE BANK, N.A. AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-MLN1, TRUSTEE OF THE 11 ROXTON STREET CONDOMINIUM; U.S. BANK N.A. AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF10; and U.S. BANK N.A. AS TRUSTEE FOR FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF10, TRUSTEE OF THE 11 ROXTON STREET CONDOMINIUM,<br>      Defendants. | Civil Action No. |

## CERTIFICATE OF SERVICE

I, Richard C. Demerle, Esq. of the law firm of Michienzie & Sawin, LLC hereby

certify that I have this 14th day of March 2011, served on behalf of BAC Home Loans

Servicing, L.P. as successor-by-merger to Wilshire Credit Corporation as attorney in fact

for LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1, a Notice of

Removal and this Certificate of Service by causing copies hereof to be sent by first-class,

U.S. mail, postage pre-paid (M), or via electronic mail (EM), to the following:

| | |
|---|---|
| Edward Rice, Esq.<br>Volunteer Lawyers Project<br>99 Chauncy Street #400<br>Boston, MA 02111 (M) | Shiva Karimi, Esq.<br>Counsel for U.S. Bank, N.A.<br>Karimi & Associates, PC<br>268 Summer Street, Lower Level<br>Boston, MA 02110-1108 (M) |

*/s/ Richard C. Demerle*
Richard C. Demerle

# EXHIBIT 1

Complaint (without Exhibits)

COMMONWEALTH OF MASSACHUSETTS
HOUSING COURT
DEPARTMENT

SUFFOLK, ss                                    CITY OF BOSTON DIVISION
                                               DOCKET NO:

| | |
|---|---|
| Alana Waldholz Individually and as | ) |
| natural parent And next friend of | ) |
| Domenik Robinson, Ja-Shon Oliver and | ) |
| Ja-Rod McClanahan | ) |
| PLAINTIFFS | ) |
| | ) |
| v. | ) |
| | ) |
| Wilshire Credit Corporation as | ) |
| Attorney in Fact for LaSalle Bank N.A., | ) |
| as Trustee for the MLMI Trust Series | ) |
| 2006-MLNI | ) |
| DEFENDANTS | ) |

COMPLAINT

PARTIES

1.   The Plaintiff, Alana Waldholz, resides at 11 Roxton Street, unit 1, Suffolk County
     Commonwealth of Massachusetts (hereinafter "claimant").

2.   The plaintiff, Domenik Robinson a minor, resides at 11 Roxton Street, unit 1, Suffolk
     County Commonwealth of Massachusetts and brings this claim through his natural
     parent and next friend, Alana Waldholz.

3.   The plaintiff, Ja-Shon Oliver, a minor, resides at 11 Roxton Street, unit 1, Suffolk
     County Commonwealth of Massachusetts and brings this claims through his natural
     parent and next friend, Alana Waldholz

4.   The plaintiff Ja-Rod McClanahan a minor, resides at 11 Roxton Street, unit 1, Suffolk
     County Commonwealth of Massachusetts and brings this claims through his natural
     parent and next friend, Alana Waldholz.

5.   The Defendant, Wilshire Credit Corporation as Attorney in Fact for LaSalle Bank N.A.,
     as Trustee for the MLMI Trust Series 2006-MLNI is a Foreign Corporation with a
     principle place of business located at of 14523 S.W. Millikan Way Beaverton, Oregon
     9700 (hereinafter "landlord"). The Defendant has as its registered agent Corporation
     Service Company, 84 State Street Boston MA 02109.

FACTS

6.   On or about April 24, 2008, the Landlord acquired the premises located at
Condominium Unit 1 at 11 Roxton Street, Dorchester Massachusetts (hereinafter
"premises").

7.   The premises is a condominium housed in a building with two other condominiums.
The premises is the first floor condominium.

8.   At the time the Landlord acquired the premises the Plaintiff and her family were
lawfully living in the premises.

9.   The Claimant was a section 8 tenant at the time the Defendant acquired the property.
She lives at the premises with her three children, aged 5, 9, and 15. The tenant's 9 year
old is mentally disabled. Her 15 year old is also disabled.

10.  Prior to moving in, the Plaintiff paid $1,600.00 directly to the prior Defendant as a
security deposit, and an additional $1,600.00 as last month's rent.

11.  On September 8, 2008 the Inspectional Services Department of the City of Boston
(hereinafter "ISD") cited the Defendant and ordered the Defendant remedy the cross
metering of electricity at the premises. ISD reported that the lighting for the common
areas was connected to the meter for the first floor.

12.  On September 8, 2008 the Inspectional Services Department of the City of Boston cited
the Defendant and ordered the Defendant remedy the "excessive hot water" in the
premises. The "hot water temperature at the time of inspection was 163F." ISD issued
an Emergency violation and ordered compliance within 24 hours.

13.  On September 8, 2008 the Inspectional Services Department of the City of Boston cited
the Defendant and ordered the Defendant remedy thirty-two (32) violations of the State
Sanitary Code, including but not limited to:

a.   Ownership posting missing.  Ownership should be on durable material not less than 20
square inches in size and must include name, address and telephone number.

b.   Dwelling unit exterior front and back top bolt locks are defective. Locking function is
not in working order.

c.   Walls throughout dwelling unit and front common area hallway have holes.  Patch
holes and restore walls back to original condition.

d.   Unit apartment door frame cracked and not in good repair

e.   Living room right door is missing.

f.   Master bedroom left and middle windows are defective.  Windows do not stay open.

g.   Screens are missing in master bedroom and living room.

h.   Master bedroom shows evidence of a leak.  Find source of leak and repair.  Restore ceiling back to original state.

i.   Bathroom sinks through unit are loose and not secure to wall.

j.   Master bedroom toilet not secure to floor.

k.   Master bedroom smoke detector hanging from ceiling.

l.   Evidence of leak on kitchen ceiling.  Find source of leak and repair. Restore ceiling back to original state.

m.   Evidence of mice infestation under kitchen sink. Exterminate to eliminate infestation. Seal all means of entry and clean all affected areas.

n.   Kitchen cabinet base board missing under sink.

o.   Kitchen cabinet under sink has a hole.

p.   Back porch light not in working order.

q.   Evidence of leak in rear bedroom.  Find source of leak and repair.

r.   Second bathroom sink stopper not in working order.

s.   Second bathroom sink shows evidence of a leak.  Find source of leak and repair.

t.   Second bathroom ceiling has evidence of a leak.  Find source of leak.  Repair and restore ceiling back to original state.

u.   Second bathroom floor around tube needs to be recaulked.

v.   Closet outside bathroom door knob is loose.

w.   Closet outside bathroom closet bar is missing.

x.   Unit hallway vents hanging.

y.   Back common area hallway floors are in disrepair gaps and not able to keep clean.

z.   Back common area hallway needs to be clean.

aa.   Evidence of leak in rear common area hallway on second floor landing.  Stairs leading to basement need handrails and ballisters.  Debris in basement area.

bb.  Basement area has not working lights.

cc.  Back yard is overgrown.  Side yard has trash and other debris.

14.  On September 15, 2008, Defendant filed a summary process summons and complaint in Boston Housing Court regarding the premises.  However, the Defendant did not name the Plaintiff's as the current tenants of the premises.

15.  On October 9, 2008 Plaintiff filed a Post-Foreclosure Motion by Real Defendant in Interest for Special Appearance and Dismissal for Failure to Properly Terminate Tenancy as the Defendant did not properly name her in the above referenced Summons and Complaint. On November 20, 2008, the Court found for the Plaintiff and dismissed the action. This action was docket No. 08 SP 3727.

16.  On October 26, 2008 the hot water in the premises stopped working. Plaintiff called the Defendant's agents, including legal counsel, to request repairs, but the hot water remained broken.

17.  On October 27, 2008 the Inspectional Services Department of the City of Boston cited the Defendant and ordered the Defendant to repair /replace the heating system which was found to be "defective and not in working order." ISD issued an Emergency violation of the Standards of Fitness for Human Habitation and ordered compliance within 24 hours.

18.  Because the heat and hot water were still not working on October 27, 2008 the Plaintiff filed for relief from the court, requesting that the heat and hot water be restored. The Court provided notice to the Defendant's legal counsel.

19.  On October 28, 2008 the Court heard a motion for a Temporary Restraining Order and ordered the Defendant to refrain from failing to provide heat to the premises.

20.  On October 30, 2008 the Inspectional Services Department of the City of Boston cited the Defendant and ordered the Defendant to repair the furnace because it was "not in good working order / leaking water." ISD issued an Emergency violation of the Standards of Fitness for Human Habitation and again ordered compliance within 24 hours.

21.  On or about November 26, 2008 the Defendant's attorney, Richard Demerle, signed an Affidavit with the Housing Court, signed under the pains and penalties of perjury. In his Affidavit, Attorney Demerle changed the case caption of docket number 08 SP 3727, referenced above, to now list Alana Waldholz as the sole Defendant. Prior to this time Alana Waldholz had never been a named Defendant in this case, and no motion was or has been brought to add her as a named Defendant to case number 08 SP 3727.

The only Motion related to adding Alana Waldholz was her own Motion for Special Appearance specifically because she was not a named Defendant.

22. In the November 26, 2008 affidavit, Attorney Demerle, calling Alana Waldholz "Defendant Alana Waldholz" states that she "was served with a Summons and Compliant."

23. On or about November 26, 2008 the Defendant's attorney, Richard Demerle, also signed Plaintiff's Motion For Entry Of Default Judgment, with the Housing Court. In this motion, as attorney for the Defendant, he again refers to Alana Waldholz as "Defendant Alana Waldholz (the **"Defendant"**)" [emphasis in the original]. And again Attorney Demerle's Motion contained a modified case caption of docket number 08 SP 3727 to list Alana Waldholz as the sole Defendant. Again, prior to this time Alana Waldholz had never been a named Defendant in this case, and no motion was or has been brought to add her as a named Defendant to case number 08 SP 3727.

24. Defendant in its Plaintiff's Motion for Entry of Default Judgment states at line 12 that the Defendant (listed in the caption as Alana Waldholz) "On October 9, 2008 the Defendant failed to appear for the hearing on the summary process action and was defaulted." In fact Alana Waldholz was not a named Defendant in the summary process case and has never been a named Defendant in the summary process case, regardless of Attorney Demerle's assertions in his Affidavit and his changing of the captions in his filings. Further Alana Waldholz had to file a motion for Special Appearance so she could be heard because she was not named in summary process case.

25. On or about December 4, 2008 the Court granted Alana Waldholz' Post-Foreclosure Motion by Real Defendant in Interest for Special Appearance and Dismissal for Failure to Properly Terminate Tenancy. Summary Process case 08 SP 3727 was dismissed.

26. In a letter dated December 8, 2008 but mailed with postage date of December 19, 2008 the Defendant sent what purports to be a Notice To Quit requesting the Plaintiff to vacate the premises on the last day of January 2009.

27. In a letter dated December 8, 2008 the Defendant by their attorney, Erin Birmingham wrote to the Boston Housing Authority stating that the Defendant "does not wish to participate in the rental assistance program".

28. On or about December 12, 2008 there was a fire in the third floor of the building where the premises is located. The fire did not destroy the building and did not spread to the first floor condominium which is the premises subject to this action.

29. On December 15, 2008 a Housing Inspector for section 8 came to the premises and found that there was: no heat, no water, no electrical service, water damage to the

Plaintiff's possessions, no smoke detectors, broken glass, and other substandard conditions at the premises.

30. Tenant and her attorneys contacted the Defendant's agents and attorneys on several occasion requesting that the heat, water, and electrical services be restored and that she be housed in the mean time. Defendant via their attorney refused to provide alternative housing and stated that they had no obligation to repair the premises.

31. With no heat, electric, or water, and the low temperatures of a Boston winter the premises became uninhabitable and the Plaintiff and her family were placed in shelter.

32. The tenant has two disabled children and the impact of substandard conditions and the move to shelter has resulted in a substantial impact on their wellbeing.

33. The Plaintiff and her children spent Christmas and New Year's in shelter, unable to go to their home, sleep in their own beds, or open presents under their Christmas tree, all because the Defendant failed to restore the heat, electricity and water at the premises.

34. The Plaintiff lost her job in which she used to earn $17.80 an hour. She was terminated because she was unable to get to her job location from the shelter on public transportation and Plaintiff does not own a car.

35. Despite repeated requests Defendant failed to repair to the premises, as a result, on January 7, 2009 Tenant filed a request for a Temporary Restraining Order seeking to have the heat, electricity, and water turned on. On Thursday January 8, 2009 the court told the Defendant to provide heat, electricity, and water at the premises, and scheduled both parties to report back to court on Monday January, 12 2009.

36. On Monday January 12, 2009 – one month since Plaintiff had to leave the premises and go into shelter because of lack of heat, electricity and water, the repairs had still not been completed and the Court issued its Order.

37. On Tuesday January 13, 2009 the Temporary Restraining Order was again in front of the Court because the repairs had yet to be completed.

38. On January 13th at 6:02 pm the Defendant's Attorney finally called with hotel info, but by then it was too late for Plaintiff to leave the shelter in Malden and get to the hotel in Dorchester without transportation, and also if she leaves shelter there is no bussing for her kids and she can't go back to shelter for 12 months.

39. On Wednesday January 14, 2009 the parties were again in Court and again there was no heat, electricity, or water.

40. On Friday January 16, 2009 the parties were again in Court and again there was no heat, electricity, or water.

41. On January 20 and January 23, 2009 the parties had to appear in Court again on the restraining order for the Defendant's failure to provide heat, electricity and water to the Plaintiff.

## COUNT ONE
### Breach of the Warranty of Habitability

42. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

43. The Landlord has expressly or impliedly warranted to provide and keep the premises in good repair, in compliance with all applicable laws and regulations, and in all other respects fit for habitation.

44. Conditions of disrepair exist in or around the Premises that may endanger or materially impair the health, safety and well-being of the occupants.

45. The claimant and the claimant's minor children did not cause these conditions.

46. The Landlord has known or should have known of these conditions.

47. The Landlord has not properly repaired the conditions or has failed to repair them in a reasonable time after actual or constructive notice. These conditions include, but are not limited to those described in the statement of facts section of this complaint.

48. Because of the acts described above the Landlord has breached the implied warranty of habitability.

49. As a result of the Landlord's breach of warranty, Plaintiff has suffered damages in the amount of the difference between the fair market value of the Premises in good repair and in compliance with all applicable laws and regulations.

50. As a direct and/or consequential result of the Landlord's breach of warranty, the Plaintiff's were caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

51. As a further direct and/or consequential result of the Landlord's breach of warranty the Plaintiff's have suffered, and continue to suffer, severe pain and suffering of a mental and emotional nature.

52. As a further direct and consequential result of the Landlord's breach of warranty the Plaintiff's have sustained a loss in their ability to enjoy life and live in the manner to which they were previously accustomed.

## COUNT TWO
### Interference with quiet enjoyment (m.g.l. c. 186 s.14)

53. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

54. The Landlord intentionally or willfully interfered with the provision of or failed to provide utilities or other services to the premises, all of which the Landlord is obliged to provide in violation of G.L. c 186 14.

55. The Landlord directly or indirectly interfered with the Plaintiff's quiet enjoyment of the premises by failing to provide and maintain the premises in compliance with applicable law.

56. The Landlord directly or indirectly interfered with Plaintiff's quiet enjoyment of the Premises by failing to correct the conditions of disrepair outlined in the statement of facts above.

57. As a direct and/or consequential result of the aforesaid conduct of the landlord, the Plaintiff's were caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

58. As a further direct and/or consequential result of the aforesaid conduct of the landlord the Plaintiff's have suffered, and continue to suffer, severe pain and suffering of a mental and emotional nature.

59. As a further direct and/or consequential result of the aforesaid conduct of the landlord the Plaintiff's have sustained a loss in their ability to enjoy life and live in the manner to which they were previously accustomed.

## COUNT THREE
### Retaliation

60. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

61. The Landlord retaliated against the Tenant for complaining of defective conditions in the premises. The retaliation consisted of terminating the tenancy.

## COUNT FOUR
### Intentional infliction of emotional distress
### (claimant)

62. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

63. The landlord, by its acts and failures as set out in the statement of facts, caused the Claimant severe emotional upset and anxiety.

64. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct.

65. The Defendants' conduct was extreme and outrageous under the circumstances; and the emotional distress sustained by the claimant was severe.

66. As a direct and/or consequential result of the aforesaid conduct of the landlord, the claimant was caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

67. As a further direct and/or consequential result of the aforesaid conduct of the landlord the claimant has suffered, and continues to suffer, severe pain and suffering of a mental and emotional nature.

68. As a further direct and/or consequential result of the aforesaid conduct of the landlord the claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which he/she previously was accustomed.

## COUNT FIVE
### Intentional infliction of emotional distress
### (minor claimant Domenik Robinson)

69. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

70. The landlord, by its acts and failures as set out in the statement of facts, caused the Minor Claimant severe emotional upset and anxiety.

71. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct.

72. The Defendants' conduct was extreme and outrageous under the circumstances; and the emotional distress sustained by the claimant was severe.

73. As a direct and/or consequential result of the aforesaid conduct of the landlord, the minor claimant was caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

74. As a further direct and/or consequential result of the aforesaid conduct of the landlord the minor claimant has suffered, and continues to suffer, severe pain and suffering of a mental and emotional nature.

75. As a further direct and/or consequential result of the aforesaid conduct of the landlord the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which he/she previously was accustomed.

## COUNT SIX
### Intentional infliction of emotional distress
### (minor claimant Ja-Shon Oliver)

76. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

77. The landlord, by its acts and failures as set out in the statement of facts, caused the Minor Claimant severe emotional upset and anxiety.

78. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct.

79. The Defendants' conduct was extreme and outrageous under the circumstances; and the emotional distress sustained by the claimant was severe.

80. As a direct and/or consequential result of the aforesaid conduct of the landlord, the minor claimant was caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

81. As a further direct and/or consequential result of the aforesaid conduct of the landlord the minor claimant has suffered, and continues to suffer, severe pain and suffering of a mental and emotional nature.

82. As a further direct and/or consequential result of the aforesaid conduct of the landlord the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which he/she previously was accustomed.

## COUNT SEVEN
### Intentional infliction of emotional distress
### (minor claimant Ja-Rod McClanahan)

83. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

84. The landlord, by its acts and failures as set out in the statement of facts, caused the Minor Claimant severe emotional upset and anxiety.

85. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct.

86. The Defendants' conduct was extreme and outrageous under the circumstances; and the emotional distress sustained by the claimant was severe.

87. As a direct and/or consequential result of the aforesaid conduct of the landlord, the minor claimant was caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

88. As a further direct and/or consequential result of the aforesaid conduct of the landlord the minor claimant has suffered, and continues to suffer, severe pain and suffering of a mental and emotional nature.

89. As a further direct and/or consequential result of the aforesaid conduct of the landlord the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which he/she previously was accustomed.

## COUNT EIGHT
### Negligence
### (claimant)

90. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

91. The manner in which the landlord handled its responsibilities as landlord was reckless, careless, negligent and unskillful. Specifically, but not limited to its failure to remedy defective conditions and its failure to maintain and keep the premises in good repair and condition.

92. At all times material and relevant hereto claimant handled its responsibility as tenant reasonable and in a careful manner.

93. As a direct and/or consequential result of the aforesaid negligence claimant was caused to incur expenses that but for the negligence she would not have incurred. Such expenses are not fully ascertainable at this time but will be determined at trial.

94. As a further direct and/or consequential result of the aforesaid negligence claimant has suffered, and continues to suffer, great pain and suffering of a mental and emotional nature.

95. As a further direct and/or consequential result of the aforesaid negligence claimant has sustained a loss in her ability to enjoy life and live in the manner to which she previously was accustomed.

## COUNT NINE
### Negligence
### (minor claimant Domenik Robinson)

96. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

97. The manner in which the landlord handled its responsibilities as landlord was reckless, careless, negligent and unskillful. Specifically, but not limited to its failure to remedy defective conditions and its failure to maintain and keep the premises in good repair and condition.

98. At all times material and relevant hereto the minor claimant handled its responsibility as tenant reasonably and in a careful manner.

99. As a direct and/or consequential result of the aforesaid negligence the minor claimant was caused to incur expenses that but for the negligence he/she would not have incurred. Such expenses are not fully ascertainable at this time but will be determined at trial.

100. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has suffered, and continues to suffer, great pain and suffering of a mental and emotional nature.

101. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which he/she previously was accustomed.

102. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has sustained other consequential and incidental damages. Such damages are not fully ascertainable at this time but will be determined at trial.

## COUNT TEN
### Negligence
### (minor claimant Ja-Shon Oliver)

103. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

104. The manner in which the landlord handled its responsibilities as landlord was reckless, careless, negligent and unskillful. Specifically, but not limited to its failure to remedy defective conditions and its failure to maintain and keep the premises in good repair and condition.

105. At all times material and relevant hereto the minor claimant handled its responsibility as tenant reasonably and in a careful manner.

106. As a direct and/or consequential result of the aforesaid negligence the minor claimant was caused to incur expenses that but for the negligence he/she would not have incurred. Such expenses are not fully ascertainable at this time but will be determined at trial.

107. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has suffered, and continues to suffer, great pain and suffering of a mental and emotional nature.

108. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which he/she previously was accustomed.

109. As a further direct and consequential result of the aforesaid negligence the minor claimant has sustained other consequential and incidental damages. Such damages are not fully ascertainable at this time but will be determined at trial.

## COUNT ELEVEN
### Negligence
### (minor claimant Ja-Rod McClanahan)

110. The Plaintiff repeats and re-alleges the facts set out in the "statement of facts" above and incorporates them herein by reference.

111. The manner in which the landlord handled its responsibilities as landlord was reckless, careless, negligent and unskillful. Specifically, but not limited to its failure to remedy defective conditions and its failure to maintain and keep the premises in good repair and condition.

112. At all times material and relevant hereto the minor claimant handled its responsibility as tenant reasonably and in a careful manner.

113. As a direct and/or consequential result of the aforesaid negligence the minor claimant was caused to incur expenses that but for the negligence he/she would not have incurred. Such expenses are not fully ascertainable at this time but will be determined at trial.

114. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has suffered, and continues to suffer, great pain and suffering of a mental and emotional nature.

115. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which he/she previously was accustomed.

116. As a further direct and consequential result of the aforesaid negligence the minor claimant has sustained other consequential and incidental damages. Such damages are not fully ascertainable at this time but will be determined at trial.

## DEMANDS FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court:

117. On COUNT ONE: award the Plaintiff damages based on the nature, duration, and seriousness of the defects and equal to the difference between the value of the use and enjoyment of the premises as warranted to be habitable and the value of the use and enjoyment of the premises in their defective condition, from the commencement of the tenancy to the present, and any damages to the Plaintiff which are the consequences of the Defendant's breach as well as all costs associated with this action including but not limited to reasonable attorney's fees.

118. On COUNT TWO: award the Plaintiff the greater of
   a. actual and/or consequential damages including damages for emotional distress, or
   b. three months rent with interest,
   plus costs of this action including but not limited to reasonable attorney's fees;

119. On COUNT THREE: award the Plaintiff the greater of actual and/or consequential damages including damages for emotional distress or three months rent with interest, plus costs of this action including but not limited to reasonable attorney's fees

120. On COUNT FOUR: award the claimant an amount to be determined by this court to be reasonable and just compensation for the damages she has sustained, together with her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

121. On COUNT FIVE: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages he/she has sustained, together with costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

122. On COUNT SIX: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages he/she has sustained, together with costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

123. On COUNT SEVEN: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages he/she has sustained, together with costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

124. On COUNT EIGHT: award the claimant an amount to be determined by this court to be reasonable and just compensation for the damages she has sustained, together with her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

125. On COUNT NINE: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages he/she has sustained, together with his/her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

126. On COUNT TEN: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages he/she has sustained, together with his/her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

127. On COUNT ELEVEN: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages he/she has sustained, together with his/her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

128. Order such relief as the Court deems just and proper.

## JURY CLAIM

142. The Plaintiff's request a trial by jury on all claims

Alana Waldholz Individually and as
natural parent And next friend of
Domenik Robinson, Ja-Shon Oliver and
Ja-Rod McClanahan
By their attorney,

Kenneth C. Vining, Esq.
BBO #645037
Vining Law Office, LLC
761 Broadway
Somerville, MA  02144
Ph: 617-666-0303
Fax: 617-625-0575

# EXHIBIT 2

Amended Complaint

COMMONWEALTH OF MASSACHUSETTS
HOUSING COURT
DEPARTMENT

SUFFOLK, ss                                    CITY OF BOSTON DIVISION
                                               DOCKET NO: 09H84CV00162

| | |
|---|---|
| Alana Waldholz Individually and as<br>natural parent and next friend of<br>Domenik Robinson, Ja-Shon Oliver and<br>Ja-Rod McClanahan<br>　　　PLAINTIFFS | )<br>)<br>)<br>)<br>) |
| v. | )<br>) |
| Wilshire Credit Corporation as<br>Attorney in Fact for LaSalle Bank N.A.,<br>as Trustee for the MLMI Trust Series<br>2006-MLNI; | )<br>)<br>)<br>) |
| Wilshire Credit Corporation as Attorney in Fact for<br>LaSalle Bank  N.A. as Trustee for the MLMI Trust Series<br>2006    MLNI, Trustee for the 11 Roxton Street<br>Condominium; | )<br>)<br>)<br>) |
| U.S. Bank National Association, as Trustee for First<br>Franklin Mortgage Loan Trust 2006-FF10; | )<br>) |
| U.S. Bank National Association as Trustee for First<br>Franklin Mortgage Loan Trust 2006-FF10, Trustee of the<br>11 Roxton Street Condominium; | )<br>)<br>) |
| Sirewl Cox individually; | )<br>) |
| Sirewl Cox, Trustee of the 11 Roxton Street<br>Condominium Trust; | )<br>) |
| Sabrina Gordon, Individually; | )<br>) |
| Sabrina Gordon, Trustee of the 11 Roxton Street<br>Condominium; | )<br>) |
| 11 Roxton Street Condominium; and | )<br>) |
| Bank of America<br>　　　DEFENDANTS | )<br>) |

FIRST AMENDED COMPLAINT

PARTIES

1.  The Plaintiff, Alana Waldholz, resides at 11 Roxton Street, Unit 1, Dorchester, Massachusetts, Suffolk County Commonwealth of Massachusetts (hereinafter "Claimant").

2.  The Plaintiff, Domenik Robinson a minor, resides at 11 Roxton Street, Unit 1, Dorchester, Massachusetts, Suffolk County Commonwealth of Massachusetts and brings this claim through his natural parent and next friend, Alana Waldholz.

3.  The Plaintiff, Ja-Shon Oliver, a minor, resides at 11 Roxton Street, Unit 1, Dorchester, Massachusetts, Suffolk County Commonwealth of Massachusetts and brings this claims through his natural parent and next friend, Alana Waldholz.

4.  The Plaintiff Ja-Rod McClanahan, a minor, resides at 11 Roxton Street, Unit 1, Dorchester, Massachusetts, Suffolk County Commonwealth of Massachusetts and brings this claims through his natural parent and next friend, Alana Waldholz.

5.  The Defendant, Wilshire Credit Corporation as Attorney in Fact for LaSalle Bank N.A., as Trustee for the MLMI Trust Series 2006-MLN1 is a Foreign Corporation with a principle place of business located at of 14523 S.W. Millikan Way Beaverton, Oregon 97005 (hereinafter "Landlord"). The Defendant has as its registered agent Corporation Service Company, 84 State Street, Boston, MA 02109.

6.  The Defendant, Wilshire Credit Corporation as Attorney in Fact for LaSalle Bank N.A., as Trustee for the MLMI Trust Series 2006-MLNI is a Foreign Corporation with a principle place of business located at of 14523 S.W. Millikan Way Beaverton, Oregon 97005 (hereinafter "Unit 1 Trustee"). The Defendant has as its registered agent Corporation Service Company, 84 State Street Boston, MA 02109. The Defendant is the Trustee of the 11 Roxton Street Condominium Trust.

7.  The Defendant Sirewl Cox, Trustee of the 11 Roxton Street Condominium Trust of 7 Tait Avenue, Easton, Massachusetts. (hereinafter "Unit 3 Trustee").

8.  The Defendant Sirewl Cox individually of 7 Tait Avenue, Easton, Massachusetts. (hereinafter "Unit 3 Owner").

9.  The Defendant Sabrina Gordon, Trustee of the 11 Roxton Street Condominium Trust of 7 Tait Avenue, Easton, Massachusetts (hereinafter "Unit 3 Trustee")

10. The Defendant Sabrina Gordon individually of 7 Tait Avenue, Easton, Massachusetts (hereinafter "Unit 3 Owner").

11. The Defendant, U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2006-FF10, Mortgage Pass-Through Certificates, Series 2006-FF10 is a Foreign Corporation with a principle place of business located at 150 Allegheny Center Mall IDC 24-050, Pittsburgh, PA 15212 . The Defendant has as its registered agent CT

Corporation 1515 Market Street, Suite 1210, Philadelphia, PA 19102. (Hereinafter "Unit 2 Owner").

12. The Defendant, U.S. Bank National Association, as Trustee for First Franklin Mortgage Loan Trust 2006-FF10, Mortgage Pass-Through Certificates, Series 2006-FF10 is a Foreign Corporation with a principle place of business located at 150 Allegheny Center Mall IDC 24-050, Pittsburgh, PA 15212 . The Defendant has as its registered agent CT Corporation 1515 Market Street, Suite 1210, Philadelphia , PA 19102. The Defendant is the Trustee of the 11 Roxton Street Condominium Trust. (hereinafter "Unit 2 Trustee").

13. The Defendant, Bank of America is a foreign Corporation with a principle place of business located at 100 N. Tryon Street, Charlotte, NC 28255. The Defendant has as its registered office address 150 Fayetteville Street, Box 1011, Raleigh, NC 27601. Bank of America Corp officially took over LaSalle Bank Corp on October 1, 2007. (hereinafter "Landlord")

14. The Defendant, 11 Roxton Street Condominium Trust, is a duly organized and existing condominium trust having a principal place of business at 11 Roxton Street, Dorchester, Massachusetts, in the County of Suffolk in the Commonwealth of Massachusetts(hereinafter "Condominium").

## STATEMENT OF FACTS

15. On or about April 24, 2008, the Landlord acquired the premises located at Condominium Unit 1 at 11 Roxton Street, Dorchester Massachusetts (hereinafter "Premises").

16. The Premises is a condominium housed in a building with two other condominiums. The Premises is the first floor condominium.

17. At the time the Landlord acquired the premises the Claimant and her family were lawfully living in the premises.

18. The Plaintiffs were Section 8 tenants at the time the Landlord acquired the property. The Plaintiffs lived at the premises and the three children are aged 5, 9, and 15. The 9 year old is mentally disabled. The 15 year old is also disabled.

19. Prior to moving in, the Claimant paid $1,600.00 directly to the prior landlord as a security deposit, and an additional $1,600.00 as last month's rent.

20. On September 8, 2008 the Inspectional Services Department of the City of Boston (hereinafter "ISD") cited the Landlord and ordered the Landlord remedy the cross metering of electricity at the premises. ISD reported that the lighting for the common areas was connected to the meter for the first floor. This condition has not been remedied by the Landlord.

21. On September 8, 2008 ISD cited the Landlord and ordered the Landlord remedy the "excessive hot water" in the premises. The "hot water temperature at the time of

inspection was 163F." ISD issued an Emergency violation and ordered compliance within 24 hours.

22. On September 8, 2008 ISD cited the Landlord and ordered the Landlord remedy thirty-two (32) violations of the State Sanitary Code, including but not limited to:

   a.   Ownership posting missing. Ownership should be on durable material not less than 20 square inches in size and must include name, address and telephone number.

   b.   Dwelling unit exterior front and back top bolt locks are defective. Locking function is not in working order.

   c.   Walls throughout dwelling unit and front common area hallway have holes. Patch holes and restore walls back to original condition.

   d.   Unit apartment door frame cracked and not in good repair

   e.   Living room right door is missing.

   f.   Master bedroom left and middle windows are defective. Windows do not stay open.

   g.   Screens are missing in master bedroom and living room.

   h.   Master bedroom shows evidence of a leak. Find source of leak and repair. Restore ceiling back to original state.

   i.   Bathroom sinks through unit are loose and not secure to wall.

   j.   Master bedroom toilet not secure to floor.

   k.   Master bedroom smoke detector hanging from ceiling.

   l.   Evidence of leak on kitchen ceiling. Find source of leak and repair. Restore ceiling back to original state.

   m.   Evidence of mice infestation under kitchen sink. Exterminate to eliminate infestation. Seal all means of entry and clean all affected areas.

   n.   Kitchen cabinet base board missing under sink.

   o.   Kitchen cabinet under sink has a hole.

   p.   Back porch light not in working order.

   q.   Evidence of leak in rear bedroom. Find source of leak and repair.

r.  Second bathroom sink stopper not in working order.

s.  Second bathroom sink shows evidence of a leak. Find source of leak and repair.

t.  Second bathroom ceiling has evidence of a leak. Find source of leak. Repair and restore ceiling back to original state.

u.  Second bathroom floor around tube needs to be recaulked.

v.  Closet outside bathroom door knob is loose.

w.  Closet outside bathroom closet bar is missing.

x.  Unit hallway vents hanging.

y.  Back common area hallway floors are in disrepair gaps and not able to keep clean.

z.  Back common area hallway needs to be clean.

aa. Evidence of leak in rear common area hallway on second floor landing. Stairs leading to basement need handrails and ballisters. Debris in basement area.

bb. Basement area has no working lights.

cc. Back yard is overgrown. Side yard has trash and other debris.

23. On September 15, 2008, Landlord filed a Summary process Summons and Complaint in Boston Housing Court regarding the premises. This action was docket No. 08 SP 3727. However, the Landlord did not name the Plaintiffs as the current tenants of the premises.

24. On October 9, 2008 Plaintiff filed a Post-Foreclosure Motion by Real Defendant in Interest for Special Appearance and Dismissal for Failure to Properly Terminate Tenancy as the Landlord did not properly name her in the above referenced Summons and Complaint. On November 20, 2008, the Court found for the Plaintiff and dismissed the action.

25. On October 24, 2008, the heat stopped working at the Premises. Claimant called the Landlord and the Landlord's agents, to fix the heat but they did not respond.

26. On October 27, 2008, ISD cited the Landlord and ordered the Landlord to repair or replace the heating system which was found to be defective and not in working order. ISD issued an Emergency Violation of the Standards of Fitness for Human Habitation and ordered compliance within 24 hours.

27. Because the heat and hot water were still not working on October 27, 2008, the Claimant filed for relief from the Court, requesting that the heat and hot water be restored. The Court provided notice to the Landlord's legal counsel.

28. On October 28, 2008, the Court heard a motion for a Temporary Restraining Order and ordered the Landlord to refrain from failing to provide heat to the premises.

29. On October 30, 2008, ISD cited the Landlord and ordered the Landlord to repair the furnace because it was not in good working order/leaking water. ISD issued an Emergency violation of the Standards of Fitness for Human Habitation and again ordered compliance within 24 hours.

30. On or about November 26, 2008, the Landlord's attorney, Richard Demerle, signed an Affidavit with the Housing Court, signed under the pains and penalties of perjury. (hereinafter "November 2008 Affidavit") In his Affidavit, Attorney Demerle changed the case caption of docket number 08 SP 3727, referenced above, to now list Alana Waldholz as the sole "defendant". Prior to this time Alana Waldholz had never been a named defendant in this case, and no motion was or has been brought to add her as a named defendant to case number 08 SP 3727. The only Motion related to adding Alana Waldholz was her own Motion for Special Appearance specifically because she was not a named defendant.

31. In the November 2008 Affidavit, Attorney Demerle, calling Alana Waldholz "Defendant Alana Waldholz" states that she "was served with a Summons and Compliant."

32. On or about November 26, 2008 the Landlord's attorney, Richard Demerle, also signed Plaintiff's Motion For Entry Of Default Judgment, with the Housing Court. In this motion, as attorney for the Landlord, Attorney Demerle again refers to Alana Waldholz as "Defendant Alana Waldholz (the **"Defendant"**)" [emphasis in the original]. And again Attorney Demerle's Motion contained a modified case caption of docket number 08 SP 3727 to list Alana Waldholz as the sole "Defendant." Again, prior to this time Alana Waldholz had never been a named defendant in this case, and no motion was or has been brought to add her as a named defendant to case number 08 SP 3727.

33. Landlord in its Plaintiff's Motion for Entry of Default Judgment states at line 12 that the "Defendant" (listed in the caption as Alana Waldholz) "failed to appear for the hearing on the summary process action and was defaulted." In fact Alana Waldholz was not a named defendant in the summary process case and has never been a named defendant in the summary process case, regardless of Attorney Demerle's assertions in his Affidavit and his changing of the captions in his filings. Further Alana Waldholz had to file a motion for Special Appearance so she could be heard because she was not named in the Summary Process case.

34. On or about December 4, 2008 the Court granted Alana Waldholz' Post-Foreclosure Motion by Real Defendant in Interest for Special Appearance and Dismissal for Failure to Properly Terminate Tenancy. Summary Process case 08 SP 3727 was dismissed.

35. In a letter dated December 8, 2008 but mailed with postage date of December 19, 2008 the Landlord sent what purports to be a Notice To Quit requesting the tenants to vacate the premises on the last day of January 2009.

36. In a letter dated December 8, 2008 the Landlord discriminated against the tenant when they, by their attorney, Erin Birmingham wrote to the Boston Housing Authority stating that the Landlord "does not wish to participate in the rental assistance program".

37. On or about December 12, 2008 there was a fire in the third floor of the building where the premises is located. The fire did not destroy the building and did not spread to the first floor condominium which is the premises subject to this action.

38. On December 15, 2008 a Boston Housing Authority Inspector for the Section 8 program came to the premises and found the following conditions: no heat, no water hot or otherwise, no electrical service, water damage to the Plaintiffs' possessions, no smoke detectors, broken glass, and other substandard conditions at the Premises.

39. Claimant and her attorneys contacted the Landlord's agents and attorneys on several occasions requesting that the heat, water, and electrical services be restored and that she be housed in the mean time. Via their attorney, the Landlord refused to provide alternative housing and stated that they had no obligation to repair the premises.

40. With no heat, electric, or water, and the low temperatures of a Boston winter, Plaintiffs were placed in a Department of Transitional Assistance (hereinafter "DTA") shelter because the Premises were uninhabitable.

41. The Claimant has two disabled children and the impact of substandard conditions and the move to shelter has resulted in a substantial impact on their wellbeing.

42. The Claimant and her children spent Christmas and New Year's in shelter, unable to go to their home, sleep in their own beds, or open presents under their Christmas tree.

43. The Claimant lost her job in which she used to earn $17.80 an hour. She was terminated because she was unable to get to her job location from the shelter on public transportation and Claimant does not own a car.

44. Despite repeated requests, Landlord failed to repair to the premises. As a result, on January 7, 2009, Claimant filed a request for a Temporary Restraining Order seeking to have the heat, electricity, and water turned on. On Thursday, January 8, 2009 the Court told the Landlord to provide heat, electricity, and water at the premises, and scheduled both parties to report back to court on Monday, January 12, 2009.

45.  On Monday January 12, 2009, one month since Plaintiffs had to leave the premises and go into shelter because the repairs had still not been completed, the Court issued an Order requiring the Landlord to restore heat, water and electricity to the Premises to secure the front door, refrain from interfering with the Plaintiffs' quiet enjoyment and to house the Plaintiffs in a hotel until the heat, water and electricity were restored.

46.  On Tuesday, January 13, 2009 the Temporary Restraining Order was again in front of the Court because the repairs had yet to be completed.

47.  On January 13, 2009 at 6:02 pm the Landlord's attorney finally called with hotel info. By that time, Claimant had missed the deadline to notify shelter that she was vacating for the day. Further, Claimant had no transportation to get from the shelter in Malden to the hotel in Dorchester. Claimant was also unable to get transportation to school for her children from the Hotel. Finally, Plaintiff was aware of the DTA rule that would bar her from accessing shelter within twelve months after voluntarily vacating. Claimant feared that her Landlord would eventually terminate the hotel payments, she would be barred from DTA shelter leaving her family on the street.

48.  On Wednesday, January 14, 2009, the parties were again in Court and again the landlord hadn't complied with the Order of January 12, 2009 nor had the landlord remedied the conditions outlined above. The Court asked the parties to report back on the progress on January 16, 2009.

49.  On Friday, January 16, 2009, the parties were again in Court and the Landlord hadn't complied with the Order of January 12, 2009 nor had the Landlord remedied the conditions outlined above. On January 20, 2009 and January 23, 2009 the parties had to appear in Court again on the restraining order.

50.  As a result of a hearing on January 23, 2009 and the Claimant's decision to not be housed in a hotel for reasons outlined above, the Court vacated so much of the January 12, 2009 order as required the Landlord to house the Claimant in a hotel and scheduled an evidentiary hearing to determine whether a preliminary injunction should issue. That hearing was held on February 20, 2009.

51.  On January 23, 2009, the Landlord submitted a Memorandum of Law to the Court in which they allege that the property is managed by the 11 Roxton Street Condominium Trust and, therefore, Landlord cannot make the necessary repairs without cooperation of all owners.

52.  On January 22, 2009, ISD issued two orders of abatement to the Landlord. The first order was determined to constitute an emergency and the Landlord was ordered to repair or replace smoke detectors, and remove the snow and ice from the walkways within twenty-four hours. The second abatement order directed the Landlord to repair

the water damage to the Premises and restore it to its original state within thirty days. 30 days have come and gone and neither order was complied with.

53. As of January 22, 2009 there was no electricity at the premises, there was no water and the pipes were frozen, there was no heat and there was a strong odor of mildew.

54. The Landlord made no reasonable attempts to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

55. The Landlord made no reasonable attempts to work with condominium to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

56. The Landlord made no reasonable attempts to work with the Unit 2 owner to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

57. The Landlord made no reasonable attempts to work with the Unit 2 Trustee to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

58. The Landlord made no reasonable attempts to work with the Unit 3 owners to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

59. The Landlord made no reasonable attempts to work with the Unit 3 Trustees to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

60. The condominium association made no reasonable attempts to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

61. Unit 2 owners made no reasonable attempts to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

62. Unit 2 trustees made no reasonable attempts to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

63. Unit 3 owners made no reasonable attempts to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

64. Unit 3 trustees made no reasonable attempts to make repairs in accordance with the above orders, its own lawful obligations and/or requests of Claimant.

65. On January 26, 2009, the Landlord was served with a Formal Chapter 93A Demand Letter. (Attached as exhibit A).

66. On February 25, 2009, the Landlord responded to the formal chapter 93A Demand letter. (Attached as exhibit B).

67. As part of the Landlord's 93A response they specifically state that "Willshire is not the landlord of the complainant".

68. Landlord claims that they are not responsible to the tenants for the conditions that existed at the property at the time the landlord purchased the property.

69. Landlord claims that they do not accede to the lease agreement that Claimant had with the former mortgagor.

70. As of today, March 16, 2009, the lack of utilities and the bad conditions listed above continue to exist at the Premises.

71. On March 11, 2009, The Boston Housing Court issued a decision on the February 20, 2009 hearing and they ordered the following:

"The Defendant ["Landlord"] in this case is the owner of the Premises and the Plaintiff has the right to occupy the Premises, unless and until there is a court order directing her to vacate.  Until that time, the Defendant ["Landlord"] has the obligation to provide housing that meets the mandates of the state sanitary code.  It cannot hide behind the condominium documents to avoid its obligations. Accordingly, pending a trial on the merits, it is ORDERED that the Defendant:

1. is hereby restrained and enjoined from failing to restore heat, water and electricity to the premises.

2. restore heat, water and electricity to Unit 1 at 11 Roxton Street, Dorchester MA within 10 days of the date of this order".

Emphasis and "Landlord" added to clarify party.

## COUNT ONE
### Breach of the Warranty of Habitability

72. The Plaintiffs repeat and re-allege the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

73. The Defendants have expressly or impliedly warranted to provide and keep the Premises in good repair, in compliance with all applicable laws and regulations, and in all other respects fit for habitation.

74. Conditions of disrepair exist in or around the Premises that may endanger or materially impair the health, safety, and well-being of the occupants.

75. The Claimant and the Claimant's minor children did not cause these conditions.

76. The Defendants have known or should have known of these conditions.

77. The Defendants have not properly repaired the conditions or have failed to repair them in a reasonable time after actual or constructive notice. These conditions include, but are not limited to those described in the Statement of Facts section of this complaint.

78. Because of the acts described above the Defendants have breached the implied warranty of habitability.

79. As a result of the Defendants' breach of warranty, Plaintiffs have suffered damages in the amount of the difference between the fair market value of the Premises in good repair and in compliance with all applicable laws and regulations.

80. As a direct and/or consequential result of the Defendants' breach of warranty, the Plaintiffs were caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

81. As a further direct and/or consequential result of the Defendants' breach of warranty the Plaintiffs have suffered, and continue to suffer, severe pain and suffering of a mental and emotional nature.

82. As a further direct and consequential result of the Defendants' breach of warranty the Plaintiffs have sustained a loss in their ability to enjoy life and live in the manner to which they were previously accustomed.

## COUNT TWO
### Interference with Quiet Enjoyment (M.G.L. c. 186 s.14)

83. The Plaintiffs repeat and re-allege the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

84. The Defendants intentionally or willfully interfered with the provision of or failed to provide utilities or other services to the premises, all of which the Defendants are obliged to provide in violation of G.L. c 186 14.

85. The Defendants directly or indirectly interfered with the Plaintiffs' quiet enjoyment of the premises by failing to provide and maintain the Premises in compliance with applicable law.

86. The Defendants directly or indirectly interfered with Plaintiffs' quiet enjoyment of the Premises by failing to correct the conditions of disrepair outlined in the statement of facts above.

87. As a direct and/or consequential result of the aforesaid conduct of the Defendants, the Plaintiffs were caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

88. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the Plaintiffs have suffered, and continue to suffer, severe pain and suffering of a mental and emotional nature.

89. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the Plaintiffs have sustained a loss in their ability to enjoy life and live in the manner to which they were previously accustomed.

## COUNT THREE
### Retaliation

90. The Plaintiffs repeat and re-allege the facts set out in the "Statement of Facts" above and incorporate them herein by reference.

91. The Landlord retaliated against the Claimant for complaining of defective conditions in the Premises. The retaliation consisted of terminating the tenancy.

92. As a direct and/or consequential result of the aforesaid conduct of the Landlord, the Plaintiffs were caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

93. As a further direct and/or consequential result of the aforesaid conduct of the Landlord the Plaintiffs have suffered, and continue to suffer, severe pain and suffering of a mental and emotional nature.

94. As a further direct and/or consequential result of the aforesaid conduct of the Landlord the Plaintiffs have sustained a loss in their ability to enjoy life and live in the manner to which they were previously accustomed.

## COURT FOUR
### Violation of Anti-Discrimination Laws

95. The Tenant is a participant in the Section 8 Housing Choice Voucher Program and is therefore a member of a protected class under state anti-discrimination law (M.G.L. c. 151B). The Landlord's actions or failures to act as detailed herein violate this law.

96. As a direct and/or consequential result of the aforesaid conduct of the Landlord, the Plaintiffs were caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

97. As a further direct and/or consequential result of the aforesaid conduct of the Landlord the Plaintiffs have suffered, and continue to suffer, severe pain and suffering of a mental and emotional nature.

98. As a further direct and/or consequential result of the aforesaid conduct of the Landlord the Plaintiffs have sustained a loss in their ability to enjoy life and live in the manner to which they were previously accustomed.

## COUNT FIVE
### Intentional Infliction of Emotional Distress
(Claimant)

99. The Claimant repeats and re-alleges the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

100. The Defendants, by its acts and failures as set out in the statement of facts, caused the Claimant severe emotional upset and anxiety.

101. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct.

102. The Defendants' conduct was extreme and outrageous under the circumstances; and the emotional distress sustained by the Claimant was severe.

103. As a direct and/or consequential result of the aforesaid conduct of the Defendants, the Claimant was caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

104. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the Claimant suffered, and continues to suffer, severe pain and suffering of a mental and emotional nature.

105. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the Claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which she previously was accustomed.

## COUNT SIX
### Intentional Infliction of Emotional Distress
(minor claimant Domenik Robinson)

106. The minor claimant repeats and re-alleges the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

107. The Defendants, by its acts and failures as set out in the statement of facts, caused the minor claimant severe emotional upset and anxiety.

108. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct.

109. The Defendants' conduct was extreme and outrageous under the circumstances; and the emotional distress sustained by the minor claimant was severe.

110. As a direct and/or consequential result of the aforesaid conduct of the Defendants, the minor claimant was caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

111. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the minor claimant has suffered, and continues to suffer, severe pain and suffering of a mental and emotional nature.

112. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which theyw were previously accustomed.

## COUNT SEVEN
### Intentional Infliction of Emotional Distress
### (minor claimant Ja-Shon Oliver)

113. The minor claimant repeats and re-alleges the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

114. The Defendants, by its acts and failures as set out in the statement of facts, caused the minor claimant severe emotional upset and anxiety.

115. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct.

116. The Defendants' conduct was extreme and outrageous under the circumstances; and the emotional distress sustained by the minor claimant was severe.

117. As a direct and/or consequential result of the aforesaid conduct of the Defendants, the minor claimant was caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

118. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the minor claimant has suffered, and continues to suffer, severe pain and suffering of a mental and emotional nature.

119. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which they were previously accustomed.

## COUNT EIGHT
### Intentional Infliction of Emotional Distress
### (minor claimant Ja-Rod McClanahan)

120. The minor claimant repeats and re-alleges the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

121. The Defendants by its acts and failures as set out in the statement of facts, caused the minor claimant severe emotional upset and anxiety.

122. The Defendants intended to inflict emotional distress or knew or should have known that emotional distress was the likely result of its conduct.

123. The Defendants' conduct was extreme and outrageous under the circumstances; and the emotional distress sustained by the minor claimant was severe.

124. As a direct and/or consequential result of the aforesaid conduct of the Defendants, the minor claimant was caused to incur damages. Such damages are not fully ascertainable at this time but will be determined at trial.

125. As a further direct and/or consequential result of the aforesaid conduct of the Defendants the minor claimant has suffered, and continues to suffer, severe pain and suffering of a mental and emotional nature.

126. As a further direct and/or consequential result of the aforesaid conduct of the defendants the minor claimant has sustained a loss in his/her ability to enjoy life and live in the manner to which they were previously accustomed.

<div align="center">

**COUNT NINE**
**Negligence**
**(Claimant)**

</div>

127. The Claimant repeats and re-alleges the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

128. The manner in which the Defendants handled their responsibilities and duties were reckless, careless, negligent and unskillful. Specifically, but not limited to its failure to remedy defective conditions in the premises and/or the common areas of the condominium and its failure to maintain and keep the premises and/or common areas of the condominium in good repair and condition.

129. At all times material and relevant hereto Claimant handled her responsibility as tenant reasonable and in a careful manner.

130. As a direct and/or consequential result of the aforesaid negligence Claimant was caused to incur expenses that but for the negligence she would not have incurred. Such expenses are not fully ascertainable at this time but will be determined at trial.

131. As a further direct and/or consequential result of the aforesaid negligence, Claimant has suffered, and continues to suffer, great pain and suffering of a mental and emotional nature.

132. As a further direct and/or consequential result of the aforesaid negligence Claimant has sustained a loss in her ability to enjoy life and live in the manner to which she previously was accustomed.

## COUNT TEN
### Negligence
### (minor claimant Domenik Robinson)

133. The minor claimant repeats and re-alleges the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

134. The manner in which the Defendants handled thier responsibilities and duties was reckless, careless, negligent and unskillful. Specifically, but not limited to its failure to remedy defective conditions in the premises and/or the common areas of the condominium and its failure to maintain and keep the premises and/or common areas of the condominium in good repair and condition.

135. At all times material and relevant hereto the minor claimant handled thier responsibility as tenant reasonably and in a careful manner.

136. As a direct and/or consequential result of the aforesaid negligence the minor claimant was caused to incur expenses that but for the negligence they would not have incurred. Such expenses are not fully ascertainable at this time but will be determined at trial.

137. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has suffered, and continues to suffer, great pain and suffering of a mental and emotional nature.

138. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has sustained a loss in thier ability to enjoy life and live in the manner to which there were previously accustomed.

139. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has sustained other consequential and incidental damages. Such damages are not fully ascertainable at this time but will be determined at trial.

## COUNT ELEVEN
### Negligence
### (minor claimant Ja-Shon Oliver)

140. The minor claimant repeats and re-alleges the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

141. The manner in which the Defendants handled its responsibilities and duties was reckless, careless, negligent and unskillful. Specifically, but not limited to its failure to remedy defective conditions in the premises and/or the common areas of the

condominium and its failure to maintain and keep the premises and/or common areas of the condominium in good repair and condition.

142. At all times material and relevant hereto the minor claimant handled their responsibility as tenant reasonably and in a careful manner.

143. As a direct and/or consequential result of the aforesaid negligence the minor claimant was caused to incur expenses that but for the negligence they would not have incurred. Such expenses are not fully ascertainable at this time but will be determined at trial.

144. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has suffered, and continues to suffer, great pain and suffering of a mental and emotional nature.

145. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has sustained a loss in their ability to enjoy life and live in the manner to which they were previously accustomed.

146. As a further direct and consequential result of the aforesaid negligence the minor claimant has sustained other consequential and incidental damages. Such damages are not fully ascertainable at this time but will be determined at trial.

## COUNT TWELVE
### Negligence
### (minor claimant Ja-Rod McClanahan)

147. The minor claimant repeats and re-alleges the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

148. The manner in which the Defendants handled its responsibilities and duties as defendants was reckless, careless, negligent and unskillful. Specifically, but not limited to its failure to remedy defective conditions in the premises and/or the common areas of the condominium and its failure to maintain and keep the premises and/or common areas of the condominium in good repair and condition.

149. At all times material and relevant hereto the minor claimant handled thier responsibility as tenant reasonably and in a careful manner.

150. As a direct and/or consequential result of the aforesaid negligence the minor claimant was caused to incur expenses that but for the negligence they would not have incurred. Such expenses are not fully ascertainable at this time but will be determined at trial.

151. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has suffered, and continues to suffer, great pain and suffering of a mental and emotional nature.

152. As a further direct and/or consequential result of the aforesaid negligence the minor claimant has sustained a loss in thier ability to enjoy life and live in the manner to which they were previously accustomed.

153. As a further direct and consequential result of the aforesaid negligence the minor claimant has sustained other consequential and incidental damages. Such damages are not fully ascertainable at this time but will be determined at trial.

## COUNT THIRTEEN
### (93A)

154. The Plaintiffs repeat and re-allege the facts set out in the "Statement of Facts" above and incorporates them herein by reference.

155. The Landlord is in the trade or business of renting, owning and/or managing residential housing, and has engaged and continues to engage in unfair and deceptive practices in violation of M.G.L. c. 93A and the Attorney General's regulations promulgated pursuant thereto.

156. These unfair and deceptive practices have included but are not necessarily limited to the actions and failures to act set out above in the statement of facts and also set out in the 93A demand attached as exhibit A.

157. The unfair and deceptive practices include but are not limited to the following:

    a.    The Landlord failed to comply with the State Sanitary Code or any other law applicable to the conditions of a dwelling unit within a reasonable time after notice of violation of such code or law from the Defendant or agency, in violation of 940 C.M.R. 3.17(1)(i);

    b.    The Landlord breached the implied warranty of habitability, in violation of 940 C.M.R 3.08(2);15

    c.    The Landlord willfully violated M.G.L. c. 186, § 14, in violation of 940 C.M.R. 3.17(6)(f);

    d.    The Landlord was deceptive in that they made numerous representations to the court and in their 93A response that they are not the landlord of the tenants.

    All of the Landlord's unfair and deceptive practices were willful and knowing within the meaning of M.G.L. c. 93A.

## DEMANDS FOR RELIEF

WHEREFORE, the Plaintiffs request that this Court:

158. On COUNT ONE: award the Plaintiffs damages based on the nature, duration, and seriousness of the defects and equal to the difference between the value of the use and enjoyment of the premises as warranted to be habitable and the value of the use and enjoyment of the premises in their defective condition, from the commencement of the

tenancy to the present, and any damages to the Plaintiffs which are the consequences of the Defendants' breach as well as all costs associated with this action including but not limited to reasonable attorney's fees.

159. On COUNT TWO:  award the Plaintiffs the greater of
      a. actual and/or consequential damages including damages for emotional distress, or
      b. three months rent with interest,
     plus costs of this action including but not limited to reasonable attorney's fees;

160. On COUNT THREE: award the Plaintiffs the greater of actual and/or consequential damages including damages for emotional distress or three months rent with interest, plus costs of this action including but not limited to reasonable attorney's fees.

161. On COUNT FOUR: award the Plaintiffs an amount to be determined by this court to be reasonable and just compensation for the damages she has sustained, together with her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

162. On COUNT FIVE: award the Claimant an amount to be determined by this court to be reasonable and just compensation for the damages she has sustained, together with her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

163. On COUNT SIX: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages they have sustained, together with costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

164. On COUNT SEVEN: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages they have sustained, together with costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

165. On COUNT EIGHT: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages they have sustained, together with costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

166. On COUNT NINE: award the Claimant an amount to be determined by this court to be reasonable and just compensation for the damages she has sustained, together with her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

167. On COUNT TEN: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages they have sustained, together with his/her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

168. On COUNT ELEVEN: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages they have sustained, together with his/her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

169. On COUNT TWELVE: award the minor claimant an amount to be determined by this court to be reasonable and just compensation for the damages they have sustained, together with his/her costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

170. On COUNT THIRTEEN: find that the Landlord violated Consumer Protection Laws and is liable to Plaintiffs for treble, or at least double, the amount of damages because said violations were willful or because the Landlord failed to take practicable precautions or because the Landlord failed to make a reasonable offer of settlement, together with their costs and interest thereon, all as permitted by law, plus costs of this action including but not limited to reasonable attorney's fees.

171. Order such relief as the Court deems just and proper.

### JURY CLAIM

142. The Plaintiffs request a trial by jury on all claims

Alana Waldholz Individually and as
natural parent And next friend of
Domenik Robinson, Ja-Shon Oliver and
Ja-Rod McClanahan
By their attorney,

Kenneth C. Vining, Esq.
BBO #645037
Vining Law Office, LLC
761 Broadway
Somerville, MA  02144
Ph: 617-666-0303
Fax: 617-625-0575

# EXHIBIT A

99 Chauncy Street, Suite 400
Boston, Massachusetts 02111

tel.   617-423-0648
fax   617-423-0061
tty   617-338-6790
web  www.vlpnet.org

Volunteer Lawyers Project
of the Boston Bar Association

January 26, 2009

Jay Memmott,
President of Wilshire Credit Corporation
LaSalle Bank N.A., as Trustee for the MLMI Trust Series 2006-MLNI
14523 S.W. Millikan Way
Beaverton, Oregon 97005

C/O
Attorney Erin Birmingham
Michienzie & Sawin LLC
745 Boylston Street
Boston, MA 02116-3636

Re:   My Client:   Alana Waldholz
      Premises:    11 Roxton Street,
                   Dorchester Massachusetts

## FORMAL CHAPTER 93A DEMAND LETTER

### I
### INTRODUCTION

This is a formal demand letter submitted to Jay Memmott, President of Wilshire Credit
Corporation for LaSalle Bank N.A., as Trustee for the MLMI Trust Series 2006-MLNI by
Wilshire Credit Corporation, and LaSalle Bank N.A., as Trustee for the MLMI Trust
Series 2006-MLNI (hereinafter "landlords") pursuant to Chapter 93A of the General
Laws of the Commonwealth of Massachusetts. This demand letter is submitted to you as
you are the owner of 11 Roxton Street, Dorchester Massachusetts, the landlord of my
client, Alana Waldholz, and you are in the trade or commerce of renting residential units.
This demand letter is submitted on behalf of the Tenant, Alana Waldholz (hereinafter
"tenant"),

The Tenant is aggrieved by virtue of your unfair and deceptive acts outlined below.

LSC

1

## II
## THE FACTUAL BASIS OF THE CLAIMS

1.  On or about April 24, 2008, the Landlord acquired the premises located at 11 Roxton Street, Dorchester Massachusetts, unit 1 (hereinafter "premises").

2.  At the time the Landlord acquired the premises the tenant Alana Waldholz and her family were lawfully living in unit 1.

3.  The tenant was a section 8 tenant at the time the Landlord acquired the property. She lives at the premises with her three children, aged 5, 9, and 15. The tenant's 9 year old is mentally disabled. Her 15 year old is also disabled.

4.  Prior to moving in, the tenant paid $1,600.00 directly to the prior landlord as a security deposit, and an additional $1,600.00 as last month's rent.

5.  On September 8, 2008 the Inspectional Services Department of the City of Boston (hereinafter "ISD") cited the Landlord and ordered the Landlord remedy the cross metering of electricity at the premises. ISD reported that the lighting for the common areas was connected to the meter for the first floor.

6.  On September 8, 2008 the Inspectional Services Department of the City of Boston cited the Landlord and ordered the Landlord remedy the "excessive hot water" in the premises. The "hot water temperature at the time of inspection was 163F." ISD issued an Emergency violation and ordered compliance within 24 hours.

7.  On September 8, 2008 the Inspectional Services Department of the City of Boston cited the Landlord and ordered the Landlord remedy thirty-two (32) violations of the State Sanitary Code.

8.  On October 9, 2008 client filed a Post-Foreclosure Motion by Real Defendant in Interest for Special Appearance and Dismissal for Failure to Properly Terminate Tenancy, to intervene in a pending eviction matter relating to her unit, but not naming her, or any other of the lawful tenants or occupants of the unit 1, as a defendant in the suit.

9.  On October 24, 2008 the heat in the premises stopped working. Tenant called the Landlord's agents, including legal counsel, to request repairs, but the heat remained broken.

2

10.    On October 26, 2008 the hot water in the premises stopped working. Tenant
       called the Landlord's agents, including legal counsel, to request repairs, but the
       hot water remained broken.

11.    On October 27, 2008 the Inspectional Services Department of the City of Boston
       cited the Landlord and ordered the Landlord to repair /replace the heating system
       which was found to be "defective and not in working order." ISD issued an
       Emergency violation of the Standards of Fitness for Human Habitation and
       ordered compliance within 24 hours.

12.    Because the heat and hot water were still not working on October 27, 2008 the
       tenant filed for relief from the court, requesting that the heat and hot water be
       restored. The Court provided notice to the Landlord's legal counsel.

13.    On October 28, 2008 the Court heard a motion for a Temporary Restraining Order
       and ordered the Landlord to refrain from failing to provide heat to the premises.

14.    On October 30, 2008 the Inspectional Services Department of the City of Boston
       cited the Landlord and ordered the Landlord to repair the furnace because it was
       "not in good working order / leaking water." ISD issued an Emergency violation
       of the Standards of Fitness for Human Habitation and again ordered compliance
       within 24 hours.

15.    Landlord and tenant, via their respective legal counsel had attempted to settle this
       matter with the tenant agreeing to return possession of the premises to Landlord in
       exchange for payment. Tenant had believed that the parties had reached an
       agreement however; that agreement was either withdrawn or expired prior to
       being formalized.

16.    On November 20, 2008 client filed a Motion to Reconsider her Post-Foreclosure
       Motion by Real Defendant in Interest for Special Appearance and Dismissal for
       Failure to Properly Terminate Tenancy, because she had not appeared thinking a
       settlement had been reached. The court allowed the Motion to Reconsider and
       subsequently dismissed the Landlord's purported eviction action.

17.    On or about November 26, 2008 the Landlord's attorney, Richard Demerle,
       signed an Affidavit with the Housing Court, signed under the pains and penalties
       of perjury. In his Affidavit, Attorney Demerle changed the case caption of docket
       number 08 SP 3727 to list Alana Waldholz as the sole defendant. Prior to this

time Alana Waldholz had never been a named defendant in this case, and no motion was or has been brought to add her as a named defendant to case number 08 SP 3727. The only Motion related to adding Alana Waldholz was her own Motion for Special Appearance specifically because she was not a named defendant.

18.  In the November 26, 2008 affidavit, Attorney Demerle, calling Alana Waldholz "Defendant Alana Waldholz (the "**Defendant**")" [emphasis in the original] states that she "was served with a Summons and Compliant."

19.  On or about November 26, 2008 the Landlord's attorney, Richard Demerle, also signed Plaintiff's Motion For Entry Of Default Judgment, with the Housing Court. In this motion, as attorney for the Landlord, he again refers to Alana Waldholz as "defendant Alana Waldholz (the "**Defendant**")" [emphasis in the original]. And again Attorney Demerle's Motion contained a modified case caption of docket number 08 SP 3727 to list Alana Waldholz as the sole defendant. Again, prior to this time Alana Waldholz had never been a named defendant in this case, and no motion was or has been brought to add her as a named defendant to case number 08 SP 3727.

20.  Landlord in its Plaintiff's Motion For Entry Of Default Judgment states at line 12 that the Defendant (listed in the caption as Alana Waldholz) "On October 9, 2008 the Defendant failed to appear for the hearing on the summary process action and was defaulted." In fact Alana Waldholz was not a named defendant in the summary process case and has never been a named defendant in the summary process case, regardless Attorney Demerle's assertions in his Affidavit and his changing of the captions in his filings. Further Alana Waldholz had to file a motion for Special Appearance so she could be heard because she was not named in summary process case.

21.  On or about December 4, 2008 the Court granted Alana Waldholz' Post-Foreclosure Motion by Real Defendant in Interest for Special Appearance and Dismissal for Failure to Properly Terminate Tenancy. Summary Process case 08 SP 3727 was dismissed.

22.  In a letter dated December 8, 2008 but mailed with postage date of December 19, 2008 the Landlord sent what purports to be a Notice To Quit requesting the tenant to vacate the premises on the last day of January 2009.

4

23.     In a letter dated December 8, 2008 the Landlord by their attorney, Erin
        Birmingham wrote to the Boston Housing Authority stating that the Landlord
        "does not wish to participate in the rental assistance program".

24.     On or about December 12, 2008 there was a fire in the third floor unit at the
        Premises. The fire did not destroy the building and did not spread to the first floor
        unit.

25.     On December 15, 2008 a Housing Inspector for section 8 came to the premises
        and found that there was: no heat, no water, no electrical service, water damage to
        the tenant's possessions, no smoke detectors, broken glass, and other substandard
        conditions at the premises.

26.     Tenant and her attorneys contacted the Landlord's agents and attorneys on several
        occasion requesting that the heat, water, and electrical services be restored and
        that she be housed in the mean time. Landlord via their attorney refused to
        provide alternative housing and stated that they had no obligation to repair the
        premises.

27.     With no heat, electric, or water, and the low temperatures of a Boston winter the
        premises became uninhabitable and client and her family were placed in shelter.

28.     The tenant has two disabled children and the impact of substandard conditions
        and the move to shelter has resulted in a substantial impact on their wellbeing.

29.     Alana Waldholz, and her children spent Christmas and New Years in shelter,
        unable to go to their home, sleep in their own beds, or open presents under their
        Christmas tree, all because the Landlord continued to refuse to restore the heat,
        electricity and water at the premises.

30.     Alana Waldholz lost her job in which she used to earn $17.50 an hour. She was
        terminated because she was unable to get to her job location from the shelter on
        public transportation and Alana Waldholz does not own a car.

31.     Despite repeated requests Landlord failed to attempt repairs to the premises, as a
        result, Tenant filed a request for a Temporary Restraining Order seeking to have
        the heat, electricity, and water turned on. On Thursday January 8, 2009 the court
        told the Landlord to provide heat, electricity, and water at the premises, and
        scheduled both parties to report back to court on Monday.

32. On Monday January 12, 2009 – one month since tenant Alana Waldholz had to leave the premises and go into shelter because of lack of heat, electricity and water, the repairs had still not been completed and the Court issued its Order.

33. On Tuesday January 13, 2009 the Temporary Restraining Order was again in front of the Court because the repairs had yet to be completed.

34. On Wednesday January 14, 2009 the parties were again in Court and again there was no heat, electricity, or water.

35. On January 19 and January 23, 2009 the parties had to appear in Court again on the restraining order for the landlords failure to provide heat, electricity and water to their tenant, Alana Waldholz. The utilities have still not been restored.

## III
## ARGUMENT AND
## SUMMARY OF APPLICABLE LAW

Given this factual scenario, I believe you will be liable to the tenants under six theories: warranty of habitability, infliction of emotional distress (negligent and /or intentional), unlawful discrimination, unlawful retaliation, c. 93A (unfair and deceptive trade practices) and G.L. c. 186 § 14 (quiet enjoyment and failure to furnish utilities).

## WARRANTY OF HABITABILITY

The landlord is liable for the substandard conditions in the apartment. "At a minimum this warranty [of habitability] imposes upon the landlord a duty to keep the dwelling in conformity with the State Sanitary Code. A landlord's breach of this duty abates the tenant's obligation to pay rent, *even when the landlord is not at fault and has no reasonable opportunity to make repairs."* Simon v. Solomon, 385 Mass. 91, 96, 431 N.E.2d 556, 561-2, (1982) (emphasis added).

As the Supreme Judicial Court noted in Berman & Sons, Inc. v. Jefferson, 379 Mass. 196, 200, 396 N.E. 2d 981, 986 (1979), the legislative history relating to the 1977 amendments to M.G.L. c. 239, § 8A reflects the intention of the legislature to base warranty of habitability damages upon a theory of strict liability. In support of this conclusion, the Court noted: "The tenant may not excuse her obligation with mere reasonable efforts to pay rent. *Nor may the landlord avoid his duty with mere reasonable efforts to provide a habitable dwelling."* 396 N.E. 2d at 985. Even if the landlord had fulfilled its responsibility to actually attempt to repair the problems, its failure to effectively remedy

6

the problems yields liability.

Additionally, a landlord is presumed to have knowledge of conditions of disrepair in a rented premises which existed at the inception of a tenancy. In <u>McKenna v. Begin</u>, 3 Mass. App. Ct. 168, 325 N.E.2d 587, 592 (1975), the Appeals Court emphatically stated:

> And where the premises are uninhabitable from the inception of the tenancy, damages should run from that time without the necessity of a showing that the landlord knew or had notice of defects affecting their habitability.

325 N.E.2d at 592. To the extent the tenants experienced serious substandard conditions in their apartment at or around the inception of their tenancy, the landlord is considered to have notice of the condition since the inception of the tenancy. In this case you had both actual and constructive notice of the substandard conditions, based on those that existed when you acquired the apartment, those reported to you or your agents, and those cited in the numerous inspection reports.

## UNFAIR AND DECEPTIVE TRADE PRACTICES

The Consumer Protection Act prohibits the use by a landlord of "unfair or deceptive acts or practices" in the conduct of his business as the owner, manager, or lessor of residential property. As defined by the Supreme Judicial Court of Massachusetts in <u>Lowell Gas Company v. Attorney General</u>, 377 Mass. 37, 385 N.E.2d 240 (1979), a practice is deceptive if it could be reasonably found to have caused a person to have acted differently than she otherwise would have acted.

Without limiting the scope of any other rule, regulation or statute, an act or practice is a violation of M.G.L. c.93A, § 2 if:...(1) It is oppressive or otherwise unconscionable in any respect; or...(3) It fails to comply with existing statutes, rules, regulations or laws, meant for the protection of the public's health, safety, or welfare promulgated by the Commonwealth or any political subdivision thereof intended to provide the consumers of this Commonwealth protection. 940 C.M.R. 3.16(3).

The state attorney general has promulgated regulations that provide a non-exclusive listing of unfair and deceptive trade practices in the rental business. 940 C.M.R. pt. 3.00.

Under the Consumer Protection Law, it is unlawful for a landlord:

7

a) to violate M.G.L. c. 186, § 14 by interfering with the tenants' quiet enjoyment of their residential premises in violation of 940 C.M.R. 3.1 7(6)(f);

b) to fail within a reasonable time after notice to make repairs in accordance with pre-existing representations in violation of 940 C.M.R. 3.17(1)(e);

c) to fail to comply with the State Sanitary Code and other laws applicable to the condition of residential premises within a reasonable time after notice of violations of such code or laws from the tenants in violation of 940 C.M.R. 3.17(1)(i);

d) to breach the implied warranty of habitability in violation of 940 C.M.R. 3.08(2);

e) to rent a dwelling unit which at the inception of the tenancy contained violations of law endangering and materially impairing the health, safety and well-being of the tenants in violation of 940 C.M.R. 3.17(1)(a);

f) to fail to disclose to the tenants conditions amounting to violations of law of which the landlord had knowledge or upon reasonable inspection could have acquired knowledge in violation of 940 C.M.R. 3.17(c); and

g) to retaliate or threaten to retaliate in any manner against a tenant for exercising or attempting to exercise any legal rights as set forth in M.G.L. c. 186, § 18, 940 CMR 3.17 (6)(b).

Under Massachusetts law the owner shall provide and pay for the electricity and gas used in each dwelling unit unless utilities are separately metered. 105 C.M.R. § 410.354(A).

It is also unlawful in Massachusetts to discriminate against a tenant based on their receipt of public assistance.

A landlord can violate the Consumer Protection Act without necessarily intending to do so. The landlord may have acted in good faith, without any wrongful intent, and still be in violation of the Act, entitling the tenants to recover at least compensatory or nominal

damages for the violation. <u>Slaney v. Westwood Auto. Inc.</u>, 366 Mass. 688, 322 N.E. 2d 768, 779 (1975).

Where the landlord has violated the Consumer Protection Act, the tenants are entitled to recover damages equal to the loss she suffered because of renting an apartment in defective condition. M.G.L. c. 93A, Section 9; <u>Linthicum v. Archambault</u>, 379 Mass. 381, 398 N.E. 2d 482, 485 (1979); <u>Wolfberg v. Hunter</u>, 385 Mass. 390, 399-400, 432 N.E. 2d 467, 473-74 (1982).

If the landlord's violation of Chapter 93A was knowing or willful, then the tenant is entitled to at least twice, and no more than three times, the amount of actual damages suffered as a result of violations of the Consumer Protection Act. M.G.L. c. 93A, §9(3).

The breaches of state sanitary code, the unfair or deceptive claims made by your attorney to the Court, the utility metering violation, the retaliation, the failure to make repairs, and the breach of quiet enjoyment are among the claims that entitle my client to recover under the Consumer Protection Act.

## COVENANT OF QUIET ENJOYMENT

A landlord who directly or indirectly interferes with the quiet enjoyment of residential premises by the tenant is liable for the actual and consequential damages resulting from the interference, or three times the monthly rent, whichever is greater. M.G.L. c. 186, §14.

The covenant of quiet enjoyment means that the tenant will be able to enjoy her apartment without disturbances. The landlord promises that they will not act in such a manner as to deprive the tenant of the beneficial enjoyment of the premises or materially impair the character and value of the premises. M.G.L. c. 186, Section 14; <u>Simon v. Solomon</u>, 385 Mass. 91, 102, 431 N.E. 2d 556, 565 (1982).

Deliberate or malicious intent is not required in order for a landlord to be liable for breach of the covenant of quiet enjoyment. If the natural and probable consequence of what the landlord did, or failed to do, was an interference with the full use and enjoyment of the rental premises, then the landlord is liable for the damages to the tenant resulting from the interference. <u>Blackett v. Olanoff</u>, 371 Mass. 714, 716, 358 N.E. 2d 817, 819-20 (1977); <u>Simon v. Solomon</u>, 385 Mass. 91, 102, 431 N.E. 2d 556, 565 (1982).

9

Again, the facts show that the landlord was aware of problems in the apartment for many months, and was aware from the inception of the tenancy as a matter of law, but only restored the heat and hot water after the first restraining order in 2008. Almost unbelievably the landlord again refused to restore heat, and this time water and electricity, until the tenant was granted a restraining order. As of the date of this letter, it has now been over a month since you or your agents were notified of the lack of heat, electricity, and water in the premises. In spite of a second restraining order issuing, none of the utilities have been restored. These facts prove a violation of c. 186 § 14.

Additionally, a separate prong of this statute requires that the landlord provide and furnish utilities if the law so requires. Because of the cross metering of the utilities, the bank is responsible for the payment of the electricity. The electric bill continues to be in the tenant's name. Further the broken furnace and water heater have caused additional damages to the tenant by way of excessive gas bills. The bank is liable under c. 186 § 14 for both of these utility bills.

Under the recent case of Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, tenants are also entitled to emotional distress damages for violations of c. 186 § 14 as additional damages. Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 458-459 (2007). In Dorgan v. Loukas, 19 Mass. App. Ct 959 (1985) the court upheld an award for emotional distress damages for the landlord's failure to repair a heating system.

## IV

## DAMAGES

The tenant has suffered damages and will recover under breach of warranty of habitability, infliction of emotional distress (negligent and / or intentional), unlawful discrimination, unlawful retaliation, c. 93A (unfair and deceptive trade practices) and G.L. c. 186 § 14 (quiet enjoyment and failure to furnish utilities).

## DIMINUTION IN VALUE OF APARTMENT

Damages for a landlord's implied warranty of habitability are calculated by taking the difference between the Fair Market Value of the unit in habitable condition and its reduced value in its defective condition. Hadded v. Gonzalez, 410 Mass. 855 (1991). The purpose would be to put the tenant in the same position he/she would have been in if the apartment had been in its proper condition, as nearly as possible as this can be done by an award of money damages. McKenna v. Begin, 5 Mass. App. 304, 362 N.E. 2d 548, 552 (1977). "The rent abatement begins when notice is given, not at a reasonable time after

notice. Time for repairs has no place in the calculation." Berman & Sons, Inc., 396 N.E. 2d at 986. As noted above, a rent abatement begins at inception where conditions have existed since that time.

The tenants have lived with substandard conditions in the apartment for approximately nine months since the bank purchased the property at a public foreclosure auction. Rather than attempt to provide an abatement for each individual month during which some or all of the more than 32 cited substandard conditions existed, I have chosen for purposes of this proposal to average the abatement over the entire tenancy for the sake of simplicity. Obviously, the damages to the tenants were greater when there was no heat, water, or electricity, and the tenants had to stay in a shelter.

The tenants request the following damages for diminution in value of the apartment under all three theories of liability: breach of warranty, c. 93A and c. 186. Given just the list of substandard conditions listed in the inspection reports and in restraining orders already granted by the Court, and based upon my experience in the Housing Court, I believe that the tenant will obtain an average abatement of rent of 80% of the fair market value of her apartment.   Please note that the conditions include 32 violations of the State Sanitary Code, including a rodent infestation and at multiple times no heat.

The tenant's rent was $1600 per month under her section 8 contact. An abatement of 80% would be multiplied by nine (9) months at $1600 per month.  We have calculated the damages for your client's breach of the implied warranty of habitability to Alana Waldholz and her family for this apartment as follows:

nine months x $1600 per month x 80% = $11,520

Therefore, your liability for your failure to abide by the implied warranty of habitability is $11,520 plus interest.

## CONDITIONS CLAIM UNDER C. 186 § 14 (QUIET ENJOYMENT)

Under G.L. c. 186 § 14, the tenants are entitled to three months' rent or actual damages for the failure to prevent the conditions resulting in a breach of quiet enjoyment.  Tenants can recover for separate violations breach of quite enjoyment.

For the breach of quite enjoyment in October 2008 resulting from the lack of heat and hot water the tenant is entitled to statutory damages in the amount of three months' rent: 3 x $1,600 = $4,800

The tenants also claims real emotional distress damages arising from the conditions in

11

their apartment. The conditions in the unit are very severe. The ISD inspector found 32 violations in addition to the problems with the heat and hot water. Then again in December 2008 and January 2009 the tenant has been without heat, electricity, and water and staying in shelter with her children as a result. Alana Waldholz and her children had to move out of their home just before Christmas and due to your failure to repair, they spent Christmas and New Years in shelter. My client has not been able to sleep because of the stress caused by these conditions, and she has lost appetite, suffered migraine headaches, hair loss, and has been prescribed medication for the stress related conditions and anxiety she is suffering because of the problems and the negligence of the landlord to undertake even the most minimal repairs until the involvement of lawyers. Additionally, she has two disabled children who are also suffering real distress including the 9 year old starting to wet the bed again, after not having wet the bed since he was 6. Her 5 year old is having nightmares and is unable to sleep through the night. The older son, who is 15, is suffering depression and emotional mood swings.

Given past awards in cases in the Housing Court, along with recent settlement agreements we have reached in similar cases, we believe that these conditions will yield damages of $150,000 for emotional distress for my client, and $50,000 additional for each of her children. For a total of $300,000.

Under the doctrine of Homesavers Council, this amount of emotional distress may be multiplied under G.L. c. 93A in the same manner as the abatement damages. See, Homesavers Council of Greenfield Gardens, Inc. v. Sanchez, 70 Mass. App. Ct. 453, 459)(2007) (footnote 9). The total sought for the emotional distress claim, is $300,000 x 3 = $900,000.

## UTILITIES

The electricity is improperly metered in violation of 105 C.M.R. 410.354(A), the outstanding electric bill is $1,454.13. Due to the faulty furnace and water heater the gas bill is currently $3,357.35. The total of these two utility balances is $4,811.48 These are also violations of the Consumer Protection Act and subject to being multiplied.

## MULTIPLE DAMAGES

The damages claim derives from all three substandard conditions claims. This case is predicated in part, however, on a violation of c. 93A. As noted above, the Housing Court may double or treble the award in this case based upon whether the failure to repair was willful. I believe that the judge will treble the award for diminution of value of the apartment given that, yet again, a bank has refused to undertake its responsibilities concerning conditions. My client is therefore entitled to $11,520 (diminution in value of

apartment) times three or $34,560, plus costs and attorney's fees.  She also is entitled to $4,811.48 (utility balance) times three or $14,434.44.

The multiplication of C. 93A damages imposes a penalty that is to vary with the culpability of the defendant and is based upon the egregiousness of the particular conduct.  <u>Montanez v. Bagg</u>, 24 Mass.App.Ct. 954 (1987).

The act subjects landlords to potential exposure for double or treble damage, attorneys' fees and related costs.  Relevant judicial precedent sets forth standards, to wit: -

> "The promotion of reasonable settlement offers is a prime goal of Chapter 93A, Section 9 and 11".  <u>International Fidelity Insurance Company v. Wilson</u>, 387 Mass. 841 (1983).

The provision of Chapter 93A for the multiple damages is impelled by the urgent concern of the public and of the legislature that pre-litigation settlement be promoted or induced by making it unprofitable for landlord to either ignore the reasonable requests of the Tenant for relief or to negotiate in bad faith with the tenant in respect to such belief.  M.G.L. Chapter 93A, Section 9 (3); <u>Heller v. Silver Branch</u>, ibid, at 1070.

It should also be noted that the burden is on the landlords to establish the reasonableness of any settlement offer. Any settlement offer determined to be unreasonable will still subject landlords to multiple damages.

## TOTAL OF DAMAGES CLAIMED

The tenant therefore claims the following damages for the actions and inactions of the defendant:
1. Diminution in value of apartment: $34,560 (trebling $11,520);
2. Utility payments--$14,434.44 (trebling $4,811.48);
3. Emotional distress under G.L. c. 186 and c.93A--$900,000 (trebling $300,000); and
4. Statutory damages under c. 186 § 14 for failure to provide utilities--$4,800.

**Total Claims: $953,794.40**, not including claims for lost wages, retaliation, and discrimination.

13

## COSTS AND ATTORNEY'S FEES

I want to also note that the tenants are entitled to recover the costs of suit and attorney's fees by virtue of their claims under the claims noted above. All of these claims are "fee-shifting" claims, in which the landlord will pay the tenants' attorney's' fees.

I want to be clear that should my client prevail on either of these claims, they are entitled to their attorney's fees as allowed or limited by statute and the Judge's ruling. Attorney Jennifer Stam Goldberg and any additional private council that participates in this case would be included in any demand for attorney's fees.

## IV
## DEMAND

**In sum, my clients are willing to settle the case for the total of the amounts noted above, in this case $321,131.50 waiving costs and attorney's fees to date.** My clients also require a waiver of all damage claims against the tenants, and a neutral landlord reference. They are willing to provide a waiver of all claims based upon the transactions and occurrences noted in the pleadings in this case. Additionally, this offer is an offer in which clients would relinquish possession of the apartment to the landlord.

This offer to settle also waives the Tenant's claims for retaliation, discrimination, and lost wages. Should this case not settle the Tenant would be free to fully pursue those claims at trial to the jury.

I want to add that my client still has substandard conditions which exist in her apartment, including the conditions noted in October and again in the December 15, 2008 inspection report. Please insure that these serious substandard conditions are repaired.

I anticipate your response in accordance with the provisions of the applicable and relevant law, and within the period of time mandated by the statutory laws of the Commonwealth.

Edward Rice
Volunteer Lawyers Project
99 Chauncy Street #400
Boston MA 02111
Ph: 617-423-0648

14

Richard Demerle

745 Boylston Street
Boston, Massachusetts
02116-3636

Telephone
617 227-5660

Michienzie & Sawin LLC

Facsimile
617 227-5882

November 26, 2008

Email
rd@masatlaw.com

Clerk's Office - Civil
Boston Housing Court
Edward W. Brooke Courthouse
24 New Chardon Street
Boston, MA 02114

Re:   Wilshire Credit Corporation v. Waldholz,
      Boston Housing Court, Docket No. 08-SP-03727

Dear Sir or Ms.:

On behalf of the Plaintiff, LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1 as serviced by Wilshire Credit Corporation ("**Plaintiff**"), I have enclosed the Plaintiff's Motion for Entry of Default Judgment ("**Motion for Default**").

As the Court has already scheduled a hearing in this matter for Thursday, December 4, 2008, the Plaintiff respectfully suggests that the Motion for Default be heard at the same time.

Thank you for your attention to this matter.

Yours truly,

Richard C. Demerle

RCD
07.1200E
cc:   Paul Michienzie, Esq.

{00179758.DOC}

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

HOUSING COURT DEPARTMENT
CITY OF BOSTON DIVISION
DOCKET NO. 08-SP-3727

LASALLE BANK, N.A., AS TRUSTEE
FOR THE MLMI TRUST SERIES 2006-
MLN1 AS SERVICED BY WILSHIRE
CREDIT CORPORATION,
          Plaintiff,

v.

ALANA WALDHOLZ,
          Defendant.

## PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

More than two (2) months after being served with the summary process

summons and complaint in this action, defendant Alana Waldholz (the "Defendant")

has failed to answer the complaint. During this time, the Defendant has been

represented by two (2) attorneys and she has availed herself of this Court by filing other

motions and scheduling other hearings, some of which she has failed to appear for.

Therefore, plaintiff LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-

MLN1 as serviced by Wilshire Credit Corporation ("LaSalle Bank") respectfully moves

this Court to enter a default judgment against the Defendant pursuant to Rule 10(a) of

the Uniform Summary Process Rules. As grounds therefore, LaSalle Bank states as

follows:

{00179585.DOC}

## Defendant Has Failed to Answer the Complaint

1.   On or about September 6, 2008, LaSalle Bank had a Summons and Complaint (the "Complaint") served upon the Defendant.

2.   The entry date of the Complaint was September 15, 2008.

3.   Pursuant to Rule 3 of the Uniform Summary Process Rules, the deadline for the Defendant to answer the Complaint was September 22, 2008, more than two (2) months ago.

4.   The Defendant did not answer the Complaint by September 22, 2008.

5.   As of the date of this motion – more than two (2) months after the answer deadline – the Defendant has still not answered the Complaint.

6.   The Defendant has failed to plead or otherwise defend and, accordingly, the Plaintiff is entitled to a default judgment against the Defendant under Rule 10(a) of the Uniform Summary Process Rules.

## Defendant Has Been Represented by Counsel
## Since September 2008

7.   Since September 2008, the Defendant has been represented by counsel.

8.   Both Attorney Edward Rice of the Volunteer Lawyers Project and Attorney Jennifer Stam Goldberg of the Medical-Legal Partnership for Children/Volunteer Lawyers Project have represented the Defendant in connection with the above-captioned action, including at court hearings and mediation conferences.

9.      Both Attorney Rice and Attorney Goldberg have assisted the Defendant in filing other pleadings with the Court, including a motion to dismiss the Complaint and a temporary restraining order.

10.     However, despite being represented by counsel and despite having more than two (2) months to answer the Complaint, the Defendant has failed to do so.

### Defendant Has Failed to Appear for Hearings

11.     The Defendant has been defaulted multiple times in this action for failing to appear.

12.     On October 9, 2008, the Defendant failed to appear for the hearing on the summary process action and was defaulted.  The Defendant had notice of the hearing as, in the days prior to the hearing, the Defendant's attorneys made numerous demands on Wilshire's counsel to settle the matter.

13.     On November 13, 2008, the Defendant failed to appear for a hearing on her motion to dismiss this action.

14.     The Defendant's failure to appear for these hearings has forced LaSalle Bank to incur additional and unnecessary expense.

15.     LaSalle Bank relies upon and incorporates herein the Affidavit of Richard C. Demerle, attached as Exhibit A, pursuant to Rule 10(d) of the Uniform Summary Process Rules.

**WHEREFORE**, plaintiff LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1 as serviced by Wilshire Credit Corporation, requests that this Court enter default judgment against defendant Alana Waldholz in the above-captioned action.

Respectfully submitted,

LASALLE BANK, N.A., AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-MLN1 AS SERVICED BY WILSHIRE CREDIT CORPORATION,

By its attorneys,

MICHIENZE & SAWIN, LLC,

/s/ Richard C. Demerle
Paul Michienzie (BBO#548701)
Richard C. Demerle (BBO#652242)
Erin C. Birmingham (BBO#671863)
745 Boylston Street
Boston, MA  02116
(617) 227-5660
RD@masatlaw.com

DATE: November 26, 2008

## CERTIFICATE OF SERVICE

I, Richard C. Demerle, hereby certify that on this 26th day of November 2008, served a copy of the <u>Plaintiff's Motion for Entry of Default Judgment</u>, by first-class mail to the Defendant's counsel as follows:

Edward Rice, Esq.
Volunteer Lawyers Project
99 Chauncy Street, Suite 400
Boston, MA 02111

Jennifer Stam Goldberg, Esq.
Volunteer Lawyers Project
99 Chauncy Street, Suite 400
Boston, MA 02111

/s/ *Richard C. Demerle*
Richard C. Demerle

# EXHIBIT A

Affidavit of Richard C. Demerle, Esq.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

HOUSING COURT DEPARTMENT
CITY OF BOSTON DIVISION
DOCKET NO. 08-SP-3727

LASALLE BANK, N.A., AS TRUSTEE
FOR THE MLMI TRUST SERIES 2006-
MLN1 AS SERVICED BY WILSHIRE
CREDIT CORPORATION,
   Plaintiff,

v.

ALANA WALDHOLZ,
   Defendant.

### AFFIDAVIT OF RICHARD C. DEMERLE, ESQ. IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT

1.  I am currently an associate at the law firm of Michienzie & Sawin, LLC,

745 Boylston Street, Boston, Massachusetts, which law firm represents the plaintiff,

LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1 as serviced by

Wilshire Credit Corporation ("**LaSalle Bank**") in the above-captioned action.

2.  I have personal knowledge of the facts set forth herein and, if sworn to

testify, could competently testify thereto.

3.  On or about September 6, 2008, LaSalle Bank served summonses and

complaints upon the occupants of 11 Roxton Street, Unit 1, Dorchester, Suffolk County,

Massachusetts (the "**Property**").

4.  Defendant Alana Waldholz (the "**Defendant**") resides at the Property and

was served with a Summons and Complaint.

5.  The entry date for the Summons and Complaint was September 15, 2008.

{00179585.DOC}

6.      The Defendant's deadline to answer the Complaint was September 22, 2008.

7.      The Defendant failed to answer the Complaint pursuant to Rule 3 of the Uniform Summary Process Rules.

8.      As of the date of this affidavit, the Defendant still has not answered the Complaint.

9.      The Defendant is not an infant or an incompetent person.

10.     On information and belief, the defendant is not a person in military service as defined in the "Soldiers' and Sailors' Civil Relief Act" of 1940, as amended.


SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 26th DAY OF NOVEMBER 2008.

                        /s/ Richard C. Demerle
                        Richard C. Demerle



# *EMERGENCY*
## *COMMONWEALTH OF MASSACHUSETTS*

SUFFOLK, ss.                    REFERENCE NO. 4836



*To the Sheriffs of our Counties, or their Deputies, or any*
*Constable of any City or any Town within our said Commonwealth:*

............October 30, 2008............GREETING.

We command you to serve the below-described person or legal entity:

Jay Memmott, President/Wilshire Credit Corporation
C/O LaSalle Bank, N.A. as Trustee for: MLMI Trust



14523SW Millikan Way, suite 200

Beaverton, OR 97205

**CITY OF BOSTON**
**THOMAS M. MENINO**
**MAYOR**

Owner-occupant, tenant, or agent of the property located in the City of Boston at:

**WD** 14   11 Roxton St. #1                    Alana Waldholz (857-207-5076

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, section 127 A of the Massachusetts General Laws or is in violation of other Massachusetts General Laws or is in violation of certain ordinances of the City of Boston wit:

<u>Violation 105 CMR 410</u>:

11.Reg.351-Furnace not in good working order/leaking water. (Repair)

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................

........................................................................................          By virtue of the authority granted under
                                                       Chap. 1 Sec. 400:200B, of the Sanitary Code.
........................................................................................          I hereby notify you that an emergency
                                                       condition exists and that above violations
........................................................................................          must be corrected to meet this emergency.

It is hereby stated that violations may endanger or materially impair the health or safety, and well being of any tenant therein, or persons occupying said property.

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within 24 Hours. (Signed under the pains and penalties of perjury.)

_____          _____
        HOUSING INSPECTOR                   Dion Irish, Assistant Commissioner, for the
                                            Commissioner of Boston Inspectional Services
Inspector No. 5/311/   Ph. # 617 961 3829

HID 28E Revised 11.04   (SEE REVERSE SIDE FOR FURTHER NOTICE)




# EMERGENCY
## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                    REFERENCE NO. 42334

*To the Sheriffs of our Counties, or their Deputies, or any*
*Constable of any City or any Town within our said Commonwealth:*

................October 27, 2009................GREETING.

We command you to serve the below-described person or legal entity:

Jay Mammett, President/Wilshire Credit Corporation
C/O LaSalle Bank, N.A. as Trustee for: MLMI Trust
14523 SW Millikan Way, Suite 200
Beaverton, OR 97205

**CITY OF BOSTON**
**THOMAS M. MENINO**
**MAYOR**

Owner-occupant, tenant, or agent of the property located in the City of Boston at:

**WD 1:**........11 Roxton St. #1................Alana Waldholz (617)506-1227

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, section 127 A of the Massachusetts General Laws or is in violation of other Massachusetts General Laws or is in violation of certain ordinances of the City of Boston wit:

Violation 105 CMR 410:

1. Reg 200. The heating system is defective and not in working order. (repair/replace)

........................................................................................................

........................................................................................................

........................................................................................................

........................................................................................................

........................................................................................................

By virtue of the authority granted under Chap. 1 Sec. 400:200B, of the Sanitary Code. I hereby notify you that an emergency condition exists and that above violations must be corrected to meet this emergency.

It is hereby stated that violations may endanger or materially impair the health or safety, and well being of any tenant therein, or persons occupying said property.

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within 24 Hours. (Signed under the pains and penalties of perjury.)

_____                    _____
HOUSING INSPECTOR                          Dion Irish, Assistant Commissioner, for the
                                           Commissioner of Boston Inspectional Services

Inspector No. 051314   Ph. # 617.961.3324

HID 28E Revised 11.04   (SEE REVERSE SIDE FOR FURTHER NOTICE)




# EMERGENCY
## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                    REFERENCE NO.........................

*To the Sheriffs of our Counties, or their Deputies, or any*
*Constable of any City or any Town within our said Commonwealth:*

September 8, 2008 .............GREETING.

We command you to serve the below-described person or legal entity:

........Jay Memmert, President/Wilshire Credit Corporation
c/o LaSalle Bank, N.A. as Trustee for: MLMI Trust
14523 SW Millikan Way, Suite 200 ................................

Beaverton, OR 97205 ...............................

**CITY OF BOSTON**
**THOMAS M. MENINO**
**MAYOR**

Owner-occupant, tenant, or agent of the property located in the City of Boston at:

WD  14    11 Roxton St. unit # 1 ................... Alana Waldholz (617) 506-1227

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, section 127 A of the Massachusetts General Laws or is in violation of other Massachusetts General Laws or is in violation of certain ordinances of the City of Boston wit:

Violation 105 CMR 410:

.1...410.190-Excessive hot water. Hot water temperature at time of inspection..

.was 163 F. Hot water temperature requirements are as followed: no less than..

110 F and not to exceed 130 F.....This condition may endanger the tenants health,

.safety and well being. Restore hot water to proper temperature....................

.................................................................................

.................................................................................

.....................................................  By virtue of the authority granted under
.....................................................  Chap. 1 Sec. 400:200B, of the Sanitary Code.
.....................................................  I hereby notify you that an emergency
.....................................................  condition exists and that above violations
.....................................................  must be corrected to meet this emergency.

It is hereby stated that violations may endanger or materially impair the health or safety, and well being of any tenant therein, or persons occupying said property.

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within 24 Hours.
(Signed under the pains and penalties of perjury.)

_____                    _____
HOUSING INSPECTOR                       Dion Irish, Assistant Commissioner, for the
                                        Commissioner of Boston Inspectional Services
Inspector No. 51314  Ph. # 617-961-3330

HID 28E Revised 11.04    (SEE REVERSE SIDE FOR FURTHER NOTICE)

# Metering of Electricity (Passageways & Stairways)

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                    REFERENCE NO. .....................

*To the Sheriff of our Counties, or their Deputies, or any
Constable of any City or any Town within our said Commonwealth:*

............ September 8, 2008 ......................GREETING.

We command you to serve the below-described person or legal entity:

........Jay Memmott, President/Wilshire Credit Corporation..
c/o LaSalle Bank, N.A. as Trustee for: MLMI Trust
........14523 SW Millikan Way, Suite 200 ...................................

........ Beaverton, OR 97205 ...........................................................

**CITY OF BOSTON
THOMAS M. MENINO
MAYOR**

Owner-occupant, tenant, or agent of the property located in the City of Boston at:

WD 14     11 Roxton St. unit #1

Alana Waldholz (617) 506-1227

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property
which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code,
Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, section 127 A of
the Massachusetts General Laws or is in violation of other Massachusetts General Laws or is in violation of certain
ordinances of the City of Boston wit:   **Violation 105 CMR 410:**

1. 254B. <u>Lighting in Passageways and Stairways</u>
In dwellings containing 3 or fewer dwelling units, the light fixtures used to illuminate the
common hallway, passageway, foyer and/or stairway may be wired to the electric service serving
an <u>adjacent dwelling</u> unit provided that the occupant is responsible for paying for the electric
service to such dwelling unit and:
   A.  A written letting agreement states that the occupant is responsible for paying for said
       light fixture; and
   B.  The owner notifies the occupants of the other dwelling units.

**Condition:**  Rear common hallway lights on all three floors are connected to first floor
meter. ( Each floor has one 60 watt bulb.

<u>REMEDY</u> *The owner shall remedy this condition by providing the electricity for said light
fixture; or by having a licensed electrician obtain a permit and correcting this condition by
metering the electricity through a public meter or by entering into a written agreement with the
occupant and notifying all other occupants.*

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within ..21.. days
(Signed under the pains and penalties of perjury)

_____
HOUSING INSPECTOR

Inspector No. 251314   Ph. # 617-961-2224

_____
Dion Irish, Assistant Commissioner, for the
Commissioner of Boston Inspectional Services

X7501            (SEE REVERSE SIDE FOR FURTHER NOTICE)

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.　　　　　REFERENCE NO. 39433

*To the Sheriffs of our Counties, or their Deputies, or any
Constable of any City or any Town within our said Commonwealth:*

.....September 8, 2008.............GREETING.

We command you to serve the below-described person or legal entity:

Jay Memmott, President/Wilshire Credit Corporation
c/o LaSalle Bank, N.A. as Trustee for: MLMI Trust
14523 SW Millikan Way, Suite 200
Beaverton, OR 97205

**CITY OF BOSTON
THOMAS M. MENINO
MAYOR**

Owner-occupant, tenant, or agent of the property located in the City of Boston at:

WD 14   11 Roxton St. unit #1　　　　　Alana Waldholz (617) 506-1227

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, section 127 A of the Massachusetts General Laws or is in violation of other Massachusetts General Laws or is in violation of certain ordinances of the City of Boston wit:　　**Violation 105 CMR 410:**

1. 410.481-Ownership posting missing. Ownership should be on durable material not less 20 square inches in size and must include name, address and telephone number. No P.O. Boxes. ( Post )

2. 410.-480-Dwelling unit exterior front and back top bolt locks are defective. Locking function is not in working order. ( Repair )

3. 410.500-Walls throughout dwelling unit and front common area hallway have holes. ( Patch holes and restore walls back to original condition

4. 410.500-Unit apartment door frame cracked and not in good repair. ( Repair )

5. 410.500-Livingroom right door is missing. ( Install )

6. 410.500-Master bedroom left and middle windows are defective. Windows do not stay open. ( Repair )

7. 410.551-Screens are missing in master bedroom and livingroom. (Install/Replace)

It is hereby stated that the above violations may endanger or materially impair the health or safety, and well being of any tenant therein, or persons occupying said property.

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within _5_ days (Signed under the pains and penalties of perjury)

HOUSING INSPECTOR

ASSISTANT COMMISSIONER for the
Commissioner of Boston Inspectional Services

Inspector No.____   Ph. # ____

HID13A Revised 11/04    (SEE REVERSE SIDE FOR FURTHER NOTICE)

Page __2__ of __4__

*COMMONWEALTH OF MASSACHUSETTS*

SUFFOLK, ss.                    REFERENCE NO. __39433__

*To the Sheriffs of our Counties, or their Deputies, or any*
*Constable of any City or any Town, within our said Commonwealth:*

..... September 8, 2008 .............. GREETING.

We command you to serve the below-described person or legal entity:

Jay Memmott, President/Wilshire Credit Corporation
c/o LaSalle Bank, N.A. as Trustee for: MLMI Trust
14523 SW Millikan Way, Suite 200

Beaverton, OR 97205 ...................................................

CITY OF BOSTON
THOMAS M. MENINO
MAYOR

Owner-occupant, tenant, or agent of the property located in the City of Boston at:

WD 14    11 Roxton St. unit #1         Alana Waldholz ( 617 ) 506-1227

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, section 127 A of the Massachusetts General Laws or is in violation of other Massachusetts General Laws or is in violation of certain ordinances of the City of Boston wit:    Violation 105 CMR 410:

8. 410.500-Master bedroom shows evidence of a leak. Find source of leak and repair. Restore ceiling back to original state.

9. 410.351-Bathroom sinks throughout unit are loose and not secure to wall. ( Secure )

10. 410.351-Master bedroom toilet not secure to floor. ( Secure )

11. 410.351-Master bedroom smoke detector hanging from ceiling. ( Secure )

12. 410.500-Evidence of leak on kitchen ceiling. Find source of leak and repair. Restore ceiling back to original state.

13. 410.550-Evidence of mice infestation under kitchen sink. Exterminate to eliminate infestation. Seal all means of entry and clean all affected areas.

14. 410.500-Kitchen cabinet base board missing under sink. ( Repair )

15. 410.500-Kitchen cabinet under sink has a hole. ( seal hole )

16. 410.351-Back porch light not in working order. ( Repair/Replace )

17. 410.500-Evidence of leak in rear bedroom. Find source of leak and repair.

it is hereby stated that the above violations may endanger or materially impair the health or safety, and well being of any tenant therein, or persons occupying said property.

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within _____ days (Signed under the pains and penalties of perjury)

_____
HOUSING INSPECTOR

Inspector No. _____ Ph. # _____

ASSISTANT COMMISSIONER for the
Commissioner of Boston Inspectional Services

HIDORA Revised 11/04    (SEE REVERSE SIDE FOR FURTHER NOTICE)

Page __3__ of __4__

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                    REFERENCE NO. 39433    Fax
617 282-6
01

*To the Sheriffs of our Counties, or their Deputies, or any*
*Constable of any City or any Town within our said Commonwealth:*

........September 8, 2008..........GREETING.

We command you to serve the below-described person or legal entity:

Jay Memmott, President/Wilshire Credit Corporation
c/o LaSalle Bank, N.A. as Trustee for: MLMI Trust
.....14523 SW Millikan Way, Suite 200.....................
**CITY OF BOSTON**
**THOMAS M. MENINO**
**MAYOR**       ....Beaverton, OR 97205.................................

Owner-occupant, tenant, or agent of the property located in the City of Boston at:

## WD

The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code, Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, section 127 A of the Massachusetts General Laws or is in violation of other Massachusetts General Laws or is in violation of certain ordinances of the City of Boston wit:    **Violation 105 CMR 410:**

Restore ceiling back to original state.

18.410.351-Second bathroom sink stopper not in working order. (Repair)

19.410.351-Second bathroom sink shows evidence of a leak. Find source of leak and repair.

20. 410.500-Second bathroom ceiling has evidence of a leak. Find source of leak. Repair and restore ceiling back to original state.

21.410.500-Second bathroom floor around tub needs to be recaulked. ( recaulk )

22.410.500-Closet outside bathroom door knob is loose. ( secure )

23.410.500-Closet outside bathroom closet bar is missing. ( Install )

24.410.351-Unit hallway vent hanging. ( secure )

25.410.500-Back common area hallway floors are in disrepair,gaps, and not able to keep clean. ( Repair )

26.410.600 D-Back common area hallway needs to be clean. ( clean )

It is hereby stated that the above violations may endanger or materially impair the health or safety, and well being of any tenant therein, or persons occupying said property.

HEREOF FAIL NOT, under penalty of law to comply with said Sanitary Code, within ........ days (Signed under the pains and penalties of perjury)

_____                    _____
HOUSING INSPECTOR                          ASSISTANT COMMISSIONER for the
                                           Commissioner of Boston Inspectional Services
Inspector No. ...........  Ph. # ..................

HID 13A Revised 11/04    (SEE REVERSE SIDE FOR FURTHER NOTICE)

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.          REFERENCE NO.___3.9433___

*To the Sheriffs of our Counties, or their Deputies, or any
Constable of any City or any Town within our said Commonwealth:*

...September. 8,. .2008................GREETING.

We command you to serve the below-described person or legal entity:



Jay.Memmott,.President/Wilshire.Credit.Corporation......
c/o LaSalle Bank, N.A. as Trustee for: MLMI Trust

...14523..SW.Millikan.Way,..Suite.200...............................

.Beaverton,..OR.97205.................................................

**CITY OF BOSTON
THOMAS M. MENINO
MAYOR**

Owner-occupant, tenant, or agent of the property located in the City of Boston at:

WD..14...11.Roxton.St.,.unit.#1..................................Alana.Waldholz..(617).506-1227
The Commissioner of the Inspectional Services Department of the City of Boston has adjudged certain property
which you own, manage, occupy or are in control of is in violation of 105 CMR 410.000 State Sanitary Code,
Chapter II Minimum Standards of Fitness for Human Habitation. Authorized under Chapter 111, section 127 A of
the Massachusetts General Laws or is in violation of other Massachusetts General Laws or is in violation of certain
ordinances of the City of Boston wit:          Violation 105 CMR 410:

27.410.500-Evidence.of.leak.in.rear.common.area.hallway.on.second.floor.landing.
Find.source.of.leak..Repair.leak.and.restore.ceilings.and.walls.back.to.original
state..........................................................................
28.410.503-Stairs.leading.to.basement.need.handrails.and.ballisters..(.Install.)
29.410.602.(D)-Debris.in.basement.area..(Remove.and.clean)...................
30.410.351-Basement.area.has.no.working.lights..(.repair/replace)...............
31.410.602.(A)-Back.yard.is.overgrown..The.owner.shall.be.responsible.for......
maintaining.yard............................................................
32.410.602.(A)-Side.yard.has.trash.and.other.debris..(Remove.debris.and.clean
area.).......................................................................
...........................................................................
...........................................................................

It is hereby stated that the above violations may endanger or materially impair the health or
safety, and well being of any tenant therein, or persons occupying said property.

HEREOF FAIL NOT, under penalty of law to comply with said **Sanitary Code**, within ___ days
(Signed under the pains and penalties of perjury)

_____
HOUSING INSPECTOR

ASSISTANT COMMISSIONER for the
Commissioner of Boston Inspectional Services

Inspector No.................. Ph. #........................

HD28A Revised 11/04    SEE REVERSE SIDE FOR FURTHER NOTICE:

Erin C. Birmingham

*745 Boylston Street*
*Boston, Massachusetts*
*02116-3636*

*Telephone*
*617 227-5660*

*Michienzie & Sawin LLC*

December 8, 2008

*Facsimile*
*617 227-5882*

*Email*
*ecb@masatlaw.com*

David Gleich
Boston Housing Authority
Legal Department
52 Chauncy Street, 10th Floor
Boston, MA 02111

RE:    Alana Waldholz, 11 Roxton Street, Unit 1, Dorchester, MA 02121

Dear Attorney Gleich,

Please be advised that LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1 as serviced by Wilshire Credit Corporation purchased the above-reference property at a public foreclosure auction on April 24, 2008.

We have learned that Ms. Alana Waldholz is a participant in you agency's Section 8 Program.  **Please do not transfer the rental assistance payments.**  LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1 as serviced by Wilshire Credit Corporation does not wish to participate in the rental assistance program and wishes to market the subject premises.

A full rental period Notice to Quit has been sent to the Sheriff for service on Ms. Waldholz.  A copy of the Notice is attached hereto.

Please do no hesitate to contact me if you have any questions.

Sincerely,

Erin C. Birmingham

ECB
07.1200E
Enc.

cc:    Paul Michienzie, Esq.

{001B0455.DOC}

[illegible] party [illegible] to appear, motion DENIED 11/13/08 #129

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT

Suffolk, ss.

Housing COURT DEPARTMENT
City of Boston DIVISION
DOCKET NO.: 08-SP-03727

LaSalle Bank, N.A.
PLAINTIFF (Landlord)
v.

Laneshia B. Alexander, et al.
DEFENDANT (Tenant) and

Alana Waldholz
PROPOSED ADDITIONAL
DEFENDANT/INTERVENOR

**Post-Foreclosure Motion by Real Defendant in Interest for Special Appearance and Dismissal for Failure to Properly Terminate Tenancy**

Order: After hearing the motion is allowed. [illegible] Waldholz is a S8 tenant [illegible] and currently occupies the premises [illegible]. She was never served [illegible] a notice to quit [illegible]

Alana Waldholz, proposed additional Defendant and Intervenor in this action moves that: (a) s/he be permitted to file a special appearance in this action, as the proper party in interest; and (b) that this action be dismissed pursuant to Rule 12(b)(1) of the Mass. Rules of Civil Procedure and G.L. c. 239, § 1 because the Plaintiff ("Landlord") has not properly terminated his/her tenancy. In support of this motion, Alana Waldholz states as follows:

1. The Landlord alleges that it is the owner of the property after a foreclosure.

2. ____________ was *[choose one]*

   ____ a tenant-at-will of the prior owner of the property.

   ____ a tenant who had an unexpired term of a lease for years or a lease for a definite term in effect at the time of foreclosure.

   X a tenant who leased up with a rent subsidy with the prior owner of the property. *[Add details as to the rent subsidy—i.e., which subsidy program, and which administering agency]*: Boston Housing Authority

   *[Attach documents with proof as to such rental arrangement, i.e., a copy of the lease, subsidy documents, rent receipts, etc.]*

It is ordered [illegible] Waldholz be [illegible] defendant [illegible] as a party. It is ordered the plaintiff's [illegible] motion [illegible] dismissed [illegible]

3. Under M.G.L. c. 186, § 13, as amended by St. 2007, c. 206, § 8 (effective November 29, 2007), a tenancy at will is not terminated by operation of law by foreclosure of the property.



637 Washington Street          617-825-9660 · TTY:617-822-1860
Dorchester, MA 02124           www.codman.org

December 30, 2008

To Whom It May Concern:

MR. JA'SHON OLIVER, DOB: 10/31/1999, is a patient of the Codman Square Health Center and has the diagnoses of: ASTHMA, PERSISTENT, MODERATE (ICD-493.90), OBSESSIVE-COMPULSIVE DISORDER (ICD-300.3), DISORDER, BIPOLAR NEC (ICD-296.89), ECZEMA (ICD-692.9), ADHD (ICD-314.01), SLEEP DISORDER (ICD-780.50), Hx of BACK PAIN (ICD-724.5), HOUSING/ECONOMIC CIRCUMSTANCE NOS (ICD-V60.9), ALLERGIC RHINITIS, SEASONAL (ICD-477.0), VIRAL URI (ICD-465.9).

This patient is in the care of Dr. Fuchsia Mitchell at Codman Square Health Center. Due to Jashon Oliver (10/31/99) Medical Dx listed above, it is extremely critcal for patient to be in a stable environment. We are notified that Jarod McClanahan ( DOB 5/31/03) father Terrence McClanahan own an apartment building in Mattapan. He is willing to rent the family an appt. Terrence McClanahan is not involved with Alana Waldholz. In my opinion due to Jashon medical dx it is extremely critcal that he and family is in a safe, stable home.

Insurance policy #
       Group:
       ID:     NHP0235598

Please contact me if further information is required.

Sincerely,

Fuchsia Mitchell MD



Thomas M. Menino
Mayor

**BOSTON INSPECTIONAL SERVICES**
**HOUSING INSPECTION DIVISION**
1010 MASSACHUSETTS AVENUE – FIFTH FLOOR
BOSTON, MASSACHUSETTS 02118
OFFICE (617) 635-5322  FAX: (617) 635-5383

Admin. Support Initials____    Address not in MLOC____    Case # _____ H#

| Complainant/Occupant: | Date Received: ___ Time: |
|---|---|
| Address: | Via:           Doorbells Work ___Yes___No |
| Floor:                        Unit # | |
| Name: | Children under Six of Age ___Yes ___No |
| Telephone #: | |
| Ward                    Zip: | Lead Determination Performed ___Yes ___No |

| Owner/Agent Name | Problem/Appointment |
|---|---|
| Address: | |
| City          State      Zip | AM ____ |
| Telephone # | PM ____ |

1. ____ No Cause                    4. ____ Case Already Reported
2. ____ Cause for Action            5. ____ Reinspection Appointment Date_____
3. ____ Legal Notice Allow ____ Days    6. _____

EMERGENCY INSPECTION____    GENERAL EXAMINATION____    LEAD INSPECTION____

OUTSIDE TEMPERATURE_____    INSIDE TEMPERATURE_____

REG 105 CMR 410

It is hereby stated that said violations may endanger or impair the health and the well being of an occupant or the public.

_____
Tenant/Occupant Signature

Signed this ___ day of _____, 20__
under the pains and penalties of perjury by the
Inspector who inspected the above - described
premises.

I hereby give permission to the Housing Inspection
Division to inspect these premises and have been
explained my rights regarding a comprehensive inspection.

_____
Housing Inspector – City of Boston          Insp. #

COMPLAINANT'S COPY



# The Commonwealth of Massachusetts

## HOUSING COURT DEPARTMENT
### CITY OF BOSTON DIVISION
24 NEW CHARDON STREET
BOSTON, MA 02114-4703

MANUEL KYRIAKAKIS
FIRST JUSTICE

ROBERT L. LEWIS
CLERK MAGISTRATE

TEL: (617) 788-8487

SUFFOLK, SS:

No. _10_/_8_/_C_/_V_/_0_/_0_/_8_/_5_/_6_/

Alana Waldholz _____ PLAINTIFF(S)

VS.

LaSalle Bank, N.A., Trustee _____ DEFENDANT(S)

## APPLICATION FOR TEMPORARY RESTRAINING ORDER(S)

Based upon specific facts set out in the Affidavit or the verified Complaint filed with the Clerk of this Court, I request that the Court order the Defendant(s) to desist and refrain from:

Failing to provide heat to the premises of 11 Roxton, Street, #1, Dorchester, MA

I request that the Court specifically waive the requirement of Rule 65(c) of the Massachusetts Rules of Civil Procedure that I provide security for the issuance of the above Order(s) for the reason(s) that:

Plaintiff is Indigent.

I understand that the temporary restraining order(s) expire in 10 days and will not be extended unless during that 10 day period good cause is shown to the Court or the party(s) against whom the order(s) is (are) made consents to an extension.

Signed and sworn to under the pains and penalties of perjury this _____27th_____ day of ____October____, 20 _08_, before _____, Clerk.

_Alana Waldholz_
(SIGNATURE OF APPLICANT)

11 Roxton Street, #1
(STREET ADDRESS)

Dorchester
(CITY OR TOWN)       (TEL. NO.)

12/28/08

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## GRANT OF TEMPORARY RESTRAINING ORDER(S)

It clearly appears from the specific facts set out in the Affidavit or the verified complaint filed with the Clerk of this Court that immediate and irreparable loss or damage will result to the above referred to Plaintiff(s). Accordingly, at _10:23_ o'clock _A_ M. this _27th_ day of _October_, 20 _08_, the above referred to Defendant(s) and the employees and agents of the Defendant(s) and each and every one of them, are ordered to desist and refrain from:

Same as above.

CC to October 31, 2008 @ 10 Am.

This Temporary restraining order automatically expires 10 days from the date and time it is granted but it may be renewed in the form of a preliminary injunction if the Plaintiff(s) so requests after notice to the Defendant(s). Upon two days notice to the Plaintiff(s), the Defendant(s) may apply to the Court to dissolve or modify the temporary restraining order.

For good cause shown, I order that no security be given by the Plaintiff(s) for the issuance of these Orders. ~~I order that following security be given by the Plaintiff(s) for the issuance of these Orders.~~

NOTIFICACIÓN PARA LAS PERSONAS DE HABLA HISPANA: SI USTED NO PUEDE LEER INGLÉS, TENGA ESTE DOCUMENTO LEGAL TRADUCICO CUANTO ANTES.

_____
FIRST JUSTICE

Form 101  Appl. for TRO

*Alana Waldholz*



**CITY OF BOSTON**

INSPECTIONAL SERVICES DEPARTMENT

1010 MASSACHUSETTS AVENUE

BOSTON, MA 02118

635-5322

## NOTICE OF POSSIBLE CONDEMNATION

Acting under the authority granted to me by M.G.L.A. Chapter 111, Section 127A, also Regulation 410.831 of 105CMR-Chapter II of the State Sanitary Code, I am informing you that, based upon inspection by this Department, I am considering condemning the premises located at *11 Ruxton St. #1 Dorchester, MA, 02121* as being in such condition that the health, safety and well-being of the occupants may be endangered or materially impaired.

Before I make a final decision on the condemnation status of the property listed herein, you are entitled to a hearing. The public hearing will be held on *Tuesday 27, 2009 @ 2:00pm* at Housing Inspection Division, 1010 Massachusetts Avenue, Boston, MA 02118. This hearing will be held to determined if the premises or a specifically identified portion thereof is unfit for Human Habitation and an order to secure and vacate should be issued.

At such hearing you have the right to representation, and are advised that any adverse party has the right to appear. You also have the right to inspect and obtain copies of all documents, not included with this notice, that pertains to this case.

You are advised that the conditions enumerated in the attached violation notices are such that they may permit the occupants of the premises to exercise statutory remedies.

Notification para las personas de habla Hispana. Si usted no puede leer Ingles, tenga este Documento Legal traducido cuanto antes, puede afectar sus derechos.

Notification for people who speak Spanish. If you cannot read English have this Legal Document translated as soon as possible. It may affect your rights.

*Henrietta Weston 1/22/09*
*For the Commissioner*

ISD HSG 16

Revised 4/95



## CITY OF BOSTON
### INSPECTIONAL SERVICES DEPARTMENT
1010 MASSACHUSETTS AVENUE
BOSTON, MA 02118
635-5322

## VACATE ORDER

NO. _46528_

Acting under and by virtue of the authority vested in the Commissioner of the City of Boston Inspectional Services Department by the provisions of Chapter III, Section 5, and all other enabling authority, it is hereby ordered by the said Commissioner:

That the following-described building or structure situated at _Boston St. # 1 Dorchester, MA._ _02121_

_Dwelling unit has no water electricity shut off due to_ _possible water wires._

IN THIS CITY, BEING UNFIT FOR USE OF HUMAN HABITATION, because of:

Regulations: 410.831 — 950A — 950B

## VIOLATION OF STATE SANITARY CODE, CHAPTER II — 105 CMR

Regulation(s)

BE VACATED WITHIN _Immediately_ DAYS FROM THE SERVICE OF THIS ORDER.

TO: _Alena Waldholz_                                   Owner of the premises
                                                        Occupant of the premises

LOCATED AT: _11 Boston St. Dorchester, MA_ APT. NO. _1_

In compliance with the above action, you are hereby ordered to vacate said premises within _forthwith_ days of the service of this order.

FAILURE TO COMPLY WITH THIS ORDER WILL RENDER YOU LIABLE TO THE PENALTIES PROVIDED BY LAW WITHOUT FURTHER NOTICE.

(See other side for regulation 410.950B)

_Paulette Weston_
COMMISSIONER

ISD-HSG-13
Revised 9/94

# EXHIBIT B

Richard Demerle

745 Boylston Street
Boston, Massachusetts
02116-3636

Telephone
617 227-5660



February 25, 2008

Facsimile
617 227-5882

Email
rd@masatlaw.com

BY FACSIMILE AND
FIRST-CLASS MAIL

Edward Rice
Volunteer Lawyers Project
99 Chauncy Street #400
Boston, MA 02111

Re:   <u>Alana Waldholz, 11 Roxton Street, Unit 1, Dorchester, MA</u>

Attorney Rice:

As you know this office represents LaSalle Bank N.A. as Trustee for the MLMI Trust Series 2006-MLNI as serviced by Wilshire Credit Corporation ("**Wilshire**"). This letter responds to your letter dated January 26, 2009 purporting to be a demand letter pursuant to the Massachusetts Consumer Protection Act ("**Chapter 93A**") regarding 11 Roxton Street, Unit 1, Dorchester, Massachusetts (the "**Property**"). You represent Alana Waldholz (the "**Complainant**").

<u>Misleading Statements and Omissions</u>

As a threshold matter, your demand letter is riddled with misleading statements and omits several important facts.

For example, you claim that Wilshire is "the owner of 11 Roxton Street, Dorchester Massachusetts." This statement is false. Eleven Roxton Street is comprised of three (3) condominiums, each with a distinct owner. Wilshire is the owner of Unit 1 of 11 Roxton Street. U.S. Bank is owner of Unit 2. Sirewl Cox and Sabrina Gordon are the owners of Unit 3.

You claim that Wilshire is the landlord of the Complainant. This statement is false. Wilshire is the owner of the Property. There is no landlord-tenant relationship between the Complainant and Wilshire.

You claim that Wilshire is "in the trade or commerce of renting residential units." This statement is false. Regarding the section entitled "Factual Basis of the Claims," Wilshire responds as follows:

{00185574.DOC}

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 2

1.    Your allegation in this paragraph is inaccurate. While Wilshire did purchase the Property on April 24, 2008, Wilshire is not the landlord of the Complainant.

2.    Your allegation in this paragraph is inaccurate. Wilshire is not the landlord of the Complainant.

3.    Your allegation in this paragraph is inaccurate. Wilshire is not the landlord of the Complainant.

4.    Your allegation in this paragraph is contradicted by the Complainant's own documents. According to the lease agreement that the Complainant entered into with Larneshia Bryant Alexander regarding the Property, the Complainant paid Ms. Alexander a $400.00 security deposit.

5.    Your allegation in this paragraph is inaccurate and misleading. Wilshire is not the landlord of the Complainant. Further, the City of Boston Inspectional Services Department found as follows: "Rear common hallway lights on all three floors are connected to first floor meter. Each floor has one 60 watt bulb. REMEDY The owner shall remedy this condition by providing the electricity for said light fixture; or by having a licensed electrician obtain a permit and correcting this condition by metering the electricity through a public meter; or by entering into a written agreement with the occupant and notifying all other occupants." Finally, Wilshire had no knowledge of any alleged code violations at the Property prior to receiving notice from the City of Boston sometime after September 8, 2008.

6.    Your allegation in this paragraph is inaccurate. Wilshire is not the landlord of the Complainant. Furthermore, Wilshire had no knowledge of any alleged code violations at the Property prior to receiving notice from the City of Boston.

7.    Your allegation in this paragraph is inaccurate. Wilshire is not the landlord of the Complainant. Furthermore, Wilshire had no knowledge of any alleged code violations at the Property prior to receiving notice from the City of Boston sometime after September 8, 2008.

8.    Your allegation in this paragraph is misleading. Wilshire did name the Complainant as "Jane Doe" in a summary process action brought regarding the Property due to Wilshire's inability to determine the identity of the occupants of the

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 3

Property.  Only after serving the summary process complaint and summons did
Wilshire learn that the Complainant occupied the Property.

     9.    Your allegation in this paragraph is inaccurate and misleading.  First,
Wilshire is not the landlord of the Complainant.  Second, upon learning that the heat
was not working, Wilshire directed one of its contractors to visit the Property and effect
repairs that day.  The contractor arrived at 1 p.m. and determined that the furnace
required a replacement part; the contractor ordered the part.  Wilshire also offered to
reimburse the Complainant for any temporary heating devices that she might purchase
based on the Complainant's statement that she would purchase the heaters herself.  At 8
p.m., the Complainant informed Wilshire that she lacked the funds to purchase a
temporary heating device but that she had borrowed one from a friend so she did not
need another temporary heating device.  Third, you fail to mention why the heat was
not working.  According to the Complainant, a persistent water leak from Unit 2 – over
which Wilshire had no control – was damaging the furnace.

     10.    Your allegation in this paragraph is inaccurate and misleading.  First,
Wilshire is not the landlord of the Complainant.  Second, the Complainant called
Wilshire's contractor on a Sunday to state that there was no hot water.  Due to the
timing of the report, Wilshire's contractor was not able to visit the Property
immediately.  Third, you fail to mention why the heat and hot water were not working.
According to the Complainant, a persistent water leak from Unit 2 – over which
Wilshire had no control – was damaging the furnace and the circuit board for the hot
water heater.

     11.    Your allegation in this paragraph is inaccurate and misleading.  First,
Wilshire is not the landlord of the Complainant.  Second, Wilshire was already in the
process of repairing the heating unit for the Property, having ordered the necessary part
for the heating unit three (3) days earlier.  Third, you fail to mention why the heat and
hot water were not working.  According to the Complainant, a persistent water leak
from Unit 2 – over which Wilshire had no control – was damaging both the furnace and
the circuit board for the hot water heater.

     12.    Your allegation in this paragraph is inaccurate and misleading.  First,
Wilshire is not the landlord of the Complainant.  Second, Wilshire was already in the
process of repairing the heating unit for the Property, having ordered the necessary part
for the heating unit three (3) days earlier.  Third, you fail to mention why the heat and
hot water were not working.  According to the Complainant, a persistent water leak

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 4

from Unit 2 – over which Wilshire had no control – was damaging both the furnace and the circuit board for the hot water heater.

13.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, Wilshire was already in the process of repairing the heating unit and hot water heater. Third, you fail to mention why the heat and hot water were not working. According to the Complainant, a persistent water leak from Unit 2 – over which Wilshire had no control – was damaging both the furnace and the circuit board for the hot water heater.

14.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, Wilshire was already in the process of repairing the heating unit and hot water heater. Third, you fail to mention why the heat and hot water were not working. According to the Complainant, a persistent water leak from Unit 2 – over which Wilshire had no control – was damaging both the furnace and the circuit board for the hot water heater.

15.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, Wilshire approached the Complainant twice with settlement offers and gave the Complainant deadlines to accept only so that Wilshire would not incur further expenses unnecessarily. The Complainant failed to accept both offers by their deadlines.

16.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, the Complainant had no reason to think a settlement had been reached because the Complainant never accepted Wilshire's settlement offer.

17.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, counsel for Wilshire was lead to believe that the Complainant was the named defendant in the case as the Complainant had appeared in Court numerous times and had already filed a motion to dismiss and a request for a temporary restraining order.

18.     Your allegation in this paragraph is accurate.

19.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, counsel for Wilshire was lead to believe that the Complainant was the named defendant in the case as the

{00185574.DOC}

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 5

Complainant had appeared in Court numerous times and had already filed a motion to dismiss and a request for a temporary restraining order.

20.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, counsel for Wilshire was lead to believe that the Complainant was the named defendant in the case as the Complainant had appeared in Court numerous times and had already filed a motion to dismiss and a request for a temporary restraining order.

21.     Your allegation in this paragraph is accurate although Wilshire disputes the legal grounds upon which the Court based its decision.

22.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, the Complainant admitted at a hearing at Boston Housing Court on February 20, 2009 that she had been served with the December 8, 2008 notice to quit.

23.     Your allegation in this paragraph is inaccurate. Wilshire is not the landlord of the Complainant.

24.     Your allegation in this paragraph is misleading. You claim that, while there was a fire at 11 Roxton Street on December 12, 2008, that the "fire did not destroy the building and did not spread to the first floor unit." First, you fail to mention that the City of Boston Inspectional Services Department was so concerned about the structural integrity of 11 Roxton Street that the department ordered that a registered certified Massachusetts structural engineer submit an affidavit as to the structural adequacy of the building elements affected by the fire. As of the date of this letter, Wilshire is not aware that any such affidavit has been submitted to the City of Boston. Second, you fail to mention that the fire caused the utilities to the building to be shut off, resulting in weather-related damage to the Property.

25.     Your allegation in this paragraph is misleading. You claim that an inspector from the Boston Housing Authority visited 11 Roxton Street on December 15, 2008 and "found that there was: no heat, no water, no electrical services," etc. You fail to mention that, upon the City of Boston's first post-fire inspection of 11 Roxton Street, the City of Boston issued an immediate order to terminate all gas and electricity supplied to the building.

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 6

26.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, Wilshire could not repair the Property without (a) certification from the City of Boston that the building was structurally sound and (b) cooperation from the other unit owners to remedy problems at the building that affected all the units. Your allegation that Wilshire's position is that Wilshire does not have an obligation to provide alternate housing to the Complainant is accurate.

27.     Your allegation in this paragraph is inaccurate and misleading. First, the utilities were shut off due to the December 12, 2008 fire. Second, the Boston Fire Department ordered the building evacuated. Third, the Complainant's counsel represented that the Complainant stayed with friends for several weeks following the fire.

28.     Your allegation in this paragraph is inaccurate and misleading. Wilshire is not responsible to the Complainant for the conditions that existed at the Property when Wilshire purchased it. When Wilshire purchased the Property, Wilshire did not accede to the lease agreement that the Complainant had with the former mortgagor. Further, Wilshire is not responsible for the fire that rendered the Property uninhabitable. Finally, Wilshire made multiple settlement offers to the Complainant – e.g., $5,000.00 in October 2008, $11,000.00 in November 2008 and $7,500.00 in January 2009 – to allow her to move quickly to a new apartment but the Complainant failed to accept any of those offers.

29.     Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, Wilshire could not repair the Property without (a) certification from the City of Boston that the building was structurally sound and (b) cooperation from the other unit owners to remedy problems at the building that affected all the units. Third, Wilshire is not responsible for the fire that rendered the Property uninhabitable. Finally, Wilshire made multiple settlement offers to the Complainant – e.g., $5,000.00 in October 2008, $11,000.00 in November 2008 and $7,500.00 in January 2009 – to allow her to move quickly to a new apartment but the Complainant failed to accept any of those offers.

30.     Your suggestion in this paragraph that Wilshire is responsible for the Complainant's loss of employment has no basis in fact. Wilshire offered to house the Complainant at a Boston hotel but the Complainant refused the offer.

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 7

31.    Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, Wilshire could not repair the Property without (a) certification from the City of Boston that the building was structurally sound and (b) cooperation from the other unit owners to remedy problems at the building that affected all the units.

32.    Your allegation in this paragraph is misleading. Wilshire could not repair the Property without (a) certification from the City of Boston that the building was structurally sound and (b) cooperation from the other unit owners to remedy problems at the building that affected all the units.

33.    Your allegation in this paragraph is misleading. Wilshire could not repair the Property without (a) certification from the City of Boston that the building was structurally sound and (b) cooperation from the other unit owners to remedy problems at the building that affected all the units.

34.    Your allegation in this paragraph is misleading. Wilshire could not repair the Property without (a) certification from the City of Boston that the building was structurally sound and (b) cooperation from the other unit owners to remedy problems at the building that affected all the units.

35.    Your allegation in this paragraph is inaccurate and misleading. First, Wilshire is not the landlord of the Complainant. Second, Wilshire could not repair the Property without (a) certification from the City of Boston that the building was structurally sound and (b) cooperation from the other unit owners to remedy problems at the building that affected all the units.

<u>The Inadequate Demand Letter</u>

As a threshold matter, your Chapter 93A letter is inadequate as a matter of law. The letter fails to adequately and reasonably describe the unfair and deceptive practices allegedly engaged in by Wilshire. The Supreme Judicial Court set forth criteria for an adequate demand letter, to wit:

The demand letter serves a dual function. The first of those functions is to encourage negotiation or settlement by notifying a prospective defendant of claims arising from allegedly unlawful conduct. This gives the addressee the

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 8

opportunity to review the facts and the law involved to see if
the requested relief should be granted or denied.

Slaney v. Westwood Auto, Inc., 366 Mass. 688, 704 (1975). The second function of the
letter is to operate as a control on the amount of damages that the complainant can
ultimately recover if he proves his case. Id. The complainant must define the injury
suffered and the relief demanded in a manner that provides the prospective defendant
with an opportunity to review the facts and the law involved to see if the relief
requested should be granted or denied and enables him to make a reasonable tender of
settlement. Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 288 (1985).

Your letter suggests that the Complainant would pursue six (6) causes of action
against Wilshire: (a) breach of warranty of habitability, (b) use of unfair and deceptive
trade practices, (c) breach of the covenant of quiet enjoyment, (d) infliction of emotional
distress, (e) unlawful discrimination and (f) unlawful retaliation. Based upon your
letter, these claims must fail as a matter of law. Your letter bases all of these claims on
one assumption, that Wilshire is the landlord of the Complainant. In fact, you
repeatedly cite to cases and statutes governing landlord-tenant law – e.g., Simon v.
Solomon, 385 Mass. 91 (1982), McKenna v. Begin, 3 Mass. App. Ct. 168 (1975), Mass.
Gen. Laws c. 186, § 14, Linthicum v. Archambault, 379 Mass. 381 (1979), etc.  However,
no landlord-tenant relationship exists between Wilshire and the Complainant. The
Complainant entered into a lease with the Larneshia Bryant Alexander, the former
mortgagor of the Property. When Wilshire purchased the Property at a foreclosure
auction on April 24, 2008, the Complainant was merely an occupant of the Property.
Your failure to cite any law holding a purchaser of a foreclosed property liable for the
contractual obligations of the former mortgagor to his or her tenants is telling.[1]

The Complainant's claims fail for other reasons as well. Your claim of a violation
of Mass. Gen. Laws c. 186, § 14 or the breach of the covenants of habitability and/or
quiet enjoyment is unavailing. First, to the extent that your client relies on conditions
existing prior to September 8, 2008 – the date that the City of Boston Inspectional
Services Department cited the Property for improper conditions – Wilshire had no
knowledge of said conditions. Thus, even assuming there were State Sanitary Code
violations in existence prior to the date on which the Complainant's "tenancy" was
terminated, they do not rise to the level of an unfair and deceptive practice. See
American Tel. & Tel. Co. v. IMR Capital Corp., 888 F.Supp. 221, 256 (D.Mass. 1995)

---

[1] To the extent the Complainant argues that Mass. Gen. Laws c. 186, § 13A controls in this case, that statute only
prevented the Complainant from becoming a tenant at sufferance on the day of the foreclosure sale and nothing
more.

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 9

(holding Chapter 93A requires conduct exceeding ordinary negligence or breach of contract). Second, after learning of the conditions, Wilshire made repeated and substantive efforts to ascertain the nature and extent of the alleged conditions and to make the needed repairs. However, due to systemic problems with the building itself – e.g., water leaking from the pipes in Unit 2 into Unit 1, etc. – the repairs themselves suffered damage and required ongoing maintenance. Third, whatever mice infestation was present at the Property appears to be a direct result of your client's violation of her duty, per the State Sanitary Code, to maintain the Property in sanitary condition. Finally, the State Sanitary Code applies to owners and occupants of residential buildings within the Commonwealth. Massachusetts Sanitary Code Section 410.020 defines "occupant" as "every person living or sleeping in a dwelling." As of the date of the fire, December 12, 2008, the Complainant ceased to be an occupant of the Property.

The allegation that Wilshire has caused the Complainant emotional distress must fail. The rule is that, in order to establish a claim for intentional infliction of emotional distress, the plaintiff must establish that (1) the defendant acted with an intention to cause the plaintiff emotional harm, or it knew or should have known that its conduct would cause such harm, (2) the conduct was "extreme and outrageous" and "beyond all possible bounds of decency" and "utterly intolerable in a civilized community," (3) the defendant's conduct caused the plaintiff's emotional distress, and (4) the distress was "severe and of such a nature that no reasonable person could be expected to endure it." See Agis v. Howard Johnson Co., 371 Mass. 140, 144-145 (1976). To state a claim, there must be more than "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456, 466 (1997) (affirming summary judgment in favor of defendant where the conduct complained of could not be considered extreme and outrageous). Wilshire is unaware of any conduct on its part that would support a claim for either intentional or negligent infliction of emotional distress. Additionally, your letter fails to reasonably describe both the injuries that the Complainant allegedly suffered and the causal connection between said injuries and Wilshire as required under Chapter 93A.

Finally, your letter fails to provide any factual support for the inflammatory allegations that Wilshire engaged in unlawful discrimination and unlawful retaliation against the Complainant. Wilshire denies any conduct on its part that would support a claim for either unlawful discrimination or unlawful retaliation.

Your letter demands a "neutral landlord reference" and $321,131.50 in damages. Wilshire cannot in good faith offer a reference for the Complainant. Not only is

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 10

Wilshire not a landlord to the Complainant, but also the Complainant's actions while
occupying the Property do not merit a neutral reference.

      The demand of $321,131.50 includes $300,000.00 for alleged damages of
emotional distress resulting from the fire.  Your letter states that the Complainant and
her children have suffered stress and emotional distress.  Your letter does not state what
objective symptomatology they have suffered that is specifically related to the alleged
defective conditions of the Property, as is required.  See Payton v. Abbott Labs, 386
Mass. 540 (1982).  Your letter states that the nine-year old and the 15-year old are both
disabled.  The supporting evidence supplied with your letter proves that the disabilities
suffered by the Complainant's children existed prior to the alleged defective conditions
at the Property.  Not only does your letter fail to provide any support for the
$300,000.00 demanded by the Complainant, but it also neglects to take into account that
the Complainant elected to remain in the shelter and rejected Wilshire's offer to place
the Complainant and her children in a hotel.  Finally, the fact that the Complainant and
her children have allegedly suffered damages that curiously total $300,000.00 suggests
that the Complainant cannot connect her unspecified injuries to her alleged damages.

      The $11,520.00 of damages claimed for "diminution in value of apartment" fails
to reflect that Wilshire has a recoupment claim against the Complainant's use and
occupancy of the Property.  Thus, even if you were to prove that your client sustained
damages as a result of the actions of Wilshire, any recovery would be offset by
compensation for the months the Complainant occupied the Property without paying
for it.  As such, even if a judgment were to enter against Wilshire, any damages
awarded to your client might well be significantly reduced or completely eliminated.

      In summary, Wilshire denies committing any unfair or deceptive business
practices in connection with this matter.  However, Wilshire remains interested in
resolving this matter without the need for further litigation.  Wilshire is willing to settle

MICHIENZIE & SAWIN LLC

Edward Rice
February 25, 2009
Page 11

this matter for the sum of $11,000.00. Feel free to contact me at your earliest
convenience so that we may discuss this matter.

Yours truly,

Richard C. Demerle (BBO#652242)
Paul Michienzie (BBO#548701)
MICHIENZIE & SAWIN, LLC
745 Boylston Street
Boston, MA 02116

PM/pb

{00185574.DOC}

# EXHIBIT 3

Order of Boston Housing Court
Dated February 9, 2011

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, SS.
                                                    HOUSING COURT DEPARTMENT
                                                    CITY OF BOSTON DIVISION
                                                    CIVIL ACTION
                                                    NO. <u>09H84CV000162</u>

**ALANA WALDHOLZ, individually and as natural parent
and next friend of DOMENIK ROBINSON, JA-SHON OLIVER,
and JA-ROD McCLANAHAN,**
Plaintiffs


VS


**WILSHIRE CREDIT CORPORATION, as attorney in fact
for LaSALLE BANK, N.A. as TRUSTEE for the MLN1 TRUST SERIES 2006-MLN1,
WILSHIRE CREDIT CORPORATION, as attorney in fact
for LaSALLE BANK, N.A. as TRUSTEE for the MLN1 TRUST SERIES 2006-MLN1,
Trustee of the 11 ROXTON STREET CONDOMINIUM [sic],
U.S. BANK NATIONAL ASSOCIATION, as Trustee for FIRST FRANKLIN
MORTGAGE LOAN TRUST 2006-FF10, U.S. BANK NATIONAL
ASSOCIATION, as Trustee for FIRST FRANKLIN MORTGAGE LOAN
TRUST 2006-FF10, Trustee of the 11 ROXTON STREET CONDOMINIUM [sic],
SIREWL COX, individually, SIREWL COX, Trustee of the 11 ROXTON STREET
CONDOMINIUM TRUST, SABRINA GORDON, individually, SABRINA GORDON,
Trustee of the 11 ROXTON STREET CONDOMINIUM TRUST
and BANK OF AMERICA**
Defendants


**ORDER**

The above-captioned matter was filed on February 25, 2009 and assigned to the Average

"A" Track.  Pursuant to the tracking order, service of process was to be completed by June 23,

2009.  By order dated August 31, 2010, the Court directed the Plaintiffs to file returns of services

as to the defendants Sirewl Cox and Sabrina Gordon, individually and in capacities as trustees of

the 11 Roxton Street Condominum Trust by October 1, 2010.  No such returns have been filed.

Accordingly, so much of the above-captioned matter as it relates to Mr. Cox and/or Ms.

Gordon, individually and/or as trustees of the condominium trust is **DISMISSED**.

      **SO ORDERED.**

                                                **MARYLOU MUIRHEAD**
                                                **ASSOCIATE JUSTICE**

February        , 2011

cc:   Edward Rice, Esquire
       Shiva Karinn, Esquire
       Jonathan Bent, Esquire
       Richard Demerle, Esquire

2

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss                                    HOUSING COURT DEPT.
                                               BOSTON HOUSING COURT
                                               DOCKET NO.: 09H84CV00162

| |
|---|
| ALANA WALDHOLZ INDIVIDUALLY AND AS NATURAL PARENT AND NEXT FRIEND OF DOMENIK ROBINSON, JA-SHON OLIVER AND JA-ROD MCCLANAHAN, <br>          Plaintiffs, <br><br> v. <br><br> WILSHIRE CREDIT CORPORATION AS ATTORNEY IN FACT FOR LASALLE BANK N.A., AS TRUSTEE FOR THE MLMI TRUST SERIES 2006-MLN1; et al., <br>          Defendants. |

## CERTIFICATE OF SERVICE

I, Richard C. Demerle, Esq., of the law firm of Michienzie & Sawin, LLC hereby

certify that I have this 14th day of March 2011, served on behalf of BAC Home Loans

Servicing, L.P. as successor-by-merger to Wilshire Credit Corporation as attorney in fact

for LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1, a Notice of

Filing of Notice of Removal to Federal Court and this Certificate of Service by causing

copies hereof to be sent by first-class, U.S. mail, postage pre-paid (M), or via electronic

mail (EM), to the following:

| | |
|---|---|
| Edward Rice, Esq. <br> Volunteer Lawyers Project <br> 99 Chauncy Street #400 <br> Boston, MA 02111 (M) | Shiva Karimi, Esq. <br> Counsel for U.S. Bank, N.A. <br> Karimi & Associates, PC <br> 268 Summer Street, Lower Level <br> Boston, MA 02110-1108 (M) |

/s/ Richard C. Demerle
Richard C. Demerle

{RCD0047.DOC}