UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                           )
ALANA WALDHOLZ, et al.                     )
                                           )
            Plaintiffs,                    )
                                           )
v.                                         )        Civil Action No. 11-10434-PBS
                                           )
BAC HOME LOANS SERVICING, LP,              )
and U.S. BANK NATIONAL ASSOC.,             )
                                           )
            Defendants.                    )
_____)

REPORT AND RECOMMENDATIONS ON
CROSS MOTIONS FOR SUMMARY JUDGMENT
DEFENDANT U.S. BANK NATIONAL ASSOC.'S MOTION TO DISMISS
AND PLAINTIFF'S MOTION TO STRIKE

July 24, 2013

SOROKIN, C.M.J.

The Plaintiff, Alana Waldholz, filed this action on behalf of herself and her three minor

children alleging various sanitary code violations and other conditions at her rental property

which she alleges made her property uninhabitable.  Docket # 7-4.

Currently pending are four motions: (1)  Defendant U.S. Bank National Association's

Motion to Dismiss (Docket # 49); (2)  Defendant Bank of America's (as successor-by-merger to

BAC Home Loans Servicing)[1] Motion for Summary Judgment (Docket # 35); (3) Waldholz's

Cross Motion for Summary Judgement (Docket # 42); and (4) Waldholz's Motion to Strike Bank

of America's Requests for Admissions (or, alternatively, to permit her to serve late answers)

_____

[1]  BAC was itself successor-by-merger to Wilshire Credit Corporation, as attorney in fact
for LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1.

(Docket # 46).

For the following reasons, I RECOMMEND that the Court (1) ALLOW IN PART and DENY in PART Bank of America's Motion for Summary Judgment; (2) ALLOW IN PART and DENY IN PART the Plaintiffs' Cross Motion for Summary Judgment; (3) DENY U.S. Bank National Association's Motion to Dismiss; and (4) ALLOW IN PART the Plaintiff's Motion to Strike or Amend (Docket # 46) as described infra and otherwise DENY the motion.

FACTUAL AND PROCEDURAL BACKGROUND[2]

Waldholz and her three minor children occupied Unit 1 ('the property') of a three-family home located at 11 Roxton Street in Dorchester, Massachusetts.  Docket # 38 at ¶ 1; Docket # 7-4 (First Amended Complaint) at ¶¶ 1-4.[3]  The property is the ground-floor condominium in a building with two other condominium units.  Docket # 7-4 at ¶ 16.  Waldholz's children are aged five, nine and fifteen.  Id. at ¶ 18.  Her 9-year-old child is mentally disabled, and her 15-year-old child is also disabled.  Id.  Defendant Wilshire Credit Corporation as Attorney in Fact for LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006 MLN1 (to whom Defendant Bank of America is successor-by-merger) is a corporation with a principal place of business in Oregon and is a Trustee of the 11 Roxton Street Condominium Trust (by virtue of LaSalle

---

[2]  Because the identity of the owner of the property (as well as the identity of the parties litigating at various stages) is an important issue raised in the pending motions, particular attention is paid within the recitation of facts to the nomenclature used at various points. Additionally, although differing standards of review apply to the Rule 12 motion of U.S. National Bank and the Rule 56 motion of Bank of America, it is unnecessary in this case to present the facts separately.

[3]  The First Amended Complaint (which appears on the docket within the State Court Record at Docket # 7-4) includes numerous exhibits.  Citations to numbered paragraphs (e.g., Docket # 7-4 at ¶ 5) refer to the First Amended Complaint itself while citations to page numbers (e.g., Docket # 7-4 at 50) refer to its exhibits.

Bank's status as owner of the property).  Id. at ¶ 5.  Defendant U.S. Bank National Association

(as Trustee for First Franklin Mortgage Loan Trust 2006-FF10, Mortgage Pass-Through

Certificates, Series 2006-FF10) is a corporation with a principal place of business in

Pennsylvania, and is a Trustee of the 11 Roxton Street Condominium Trust (by virtue of its

having acquired ownership of Unit 2).  Id. at ¶ 12.

On October 31, 2007, Waldholz leased the property from Larneshia Alexander.  Docket #

38 at ¶ 2; Docket # 35-2.  Waldholz's lease with Alexander was a Section 8 lease.[4]  Docket # 44

at ¶ 29 (citing Waldholz's affidavit, Docket # 45-10).  LaSalle Bank was the assignee of

Alexander's mortgage on Unit 1.  Docket # 38 at ¶ 4.  Wilshire serviced the Alexander loan for

LaSalle Bank.  Id. at ¶ 10.  Alexander subsequently defaulted on the mortgage.  Id. at ¶ 5.

On July 2, 2008, Chuck Henrickson, acting as an authorized agent of Wilshire (as

attorney-in-fact for LaSalle Bank, N.A., as Trustee for the MLMI Trust Series 2006-MLN1),

affirmed in a Foreclosure Affidavit that Notices of Mortgagee's Sale of Real Estate had been

published on Mach 25, 2008, April 1, 2008 and April 8, 2008, and that LaSalle Bank had

complied with applicable Massachusetts law by mailing notices of same to all parties of interest.

Docket # 35-6 at 2.  He further affirmed that on April 24, 2008, LaSalle Bank purchased the

property at the foreclosure auction.  Id.  A Foreclosure Deed, executed on the same day, recites

that LaSalle Bank, as Trustee for the MLMI Trust Series 2006-MLN1 (acting as holder of the

mortgage from Alexander) thereby granted to LaSalle Bank, as Trustee for the MLMI Trust

Series 2006-MLN1 the property in which Waldholz and her children then resided.  Id. at 1.

---

[4]  The U.S. Department of Housing and Urban Development funds the Section 8 Housing
Choice Voucher Program designed to help low-income families, seniors, and people with
disabilities pay for safe, decent housing.

Again, Henrickson executed the document as an agent of Wilshire, acting as attorney-in-fact for LaSalle Bank, N.A.  Id.

On September, 15, 2008, an eviction action was commenced to obtain possession of the property subsequent to the foreclosure.  Docket # 35-10 at ¶ 1 (counsel's affidavit); Docket # 7-4 at ¶ 23.  This action (Docket # 08-SP-3727 in the Boston Housing Court) was titled, LaSalle Bank, as Trustee for the MLM1 Trust Series 2006-MLN1 as Serviced by Wilshire Credit Corporation v. Alana Waldholz.  See, e.g., Docket # 7-4 at 37.  That action was subsequently dismissed by the Court due to insufficiency of service of the Notice to Quit upon Waldholz.  Id. at 54.

On September 8, 2008, the City of Boston's Inspectional Services Department (ISD) cited the owner of the property (which it identified as "Jay Memort [sic], President/Wilshire Credit Corporation C/O LaSalle Bank, N.A. as Trustee for: MLMI Trust") for an emergency sanitary code violation (i.e., one ordered to be remedied with twenty four hours) with respect to excessively hot water.  Id. at 47. On the same date, ISD cited the same named entity for thirty-three other, non-emergency violations of the sanitary code.  Id. at 48-52.  The notice of violation referred to numerous leaks in the ceilings of the property, i.e., Unit 1 (directly below Unit 2) and directed that the owners identify and repair the source of the leaks.  Docket # 7-4 at ¶ 22.

On October 27, 2008, ISD cited the same named entity[5] for an emergency sanitary code violation, "furnace not in good working order/leaking water."  Id. at 46.  On the same date, Waldholz sought a Temporary Restraining Order from the Boston Housing Court, requesting that the Court order "LaSalle Bank, N.A., Trustee" to desist and refrain from failing to provide heat.

---

[5]  With the exception that on this occasion, it spelled Mr. Memmott's name correctly.

Id. at 57 (Housing Court Civil Action No. 08-00856).  The Court granted the restraining order on the following day.  Id.  On October 30, 2008, however, ISD again cited "Jay Memott, President/Wilshire Credit Corporation C/O LaSalle Bank, N.A. as Trustee for: MLMI Trust" for the same heat-related violation.  Id. at 45.

On December 8, 2008, an attorney contacted the Boston Housing Authority (BHA) and notified it that, "LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-MLN1 as serviced by Wilshire Credit Corporation purchased the above reference (sic) property [i.e., Waldholz's unit] at a public foreclosure auction on April 24, 2008."  Id. at 53.  The attorney notified BHA that LaSalle Bank did not wish to participate in the Section 8 rental assistance program and that it did not wish to have Section 8 rental payments transferred to it.  Id.  The attorney also indicated to BHA that it had already served upon Waldholz a Notice to Quit the premises directing her to leave the unit at the end of the January, 2009.  Id.

On December 12, 2008, a fire in another unit in Waldholz's building damaged the building.  Docket # 38 at ¶ 16.  On January 26, 2009, Waldholz's counsel sent a M.G.L. c. 93A demand letter addressed to the "President of Wilshire Credit Corporation for LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-MLNI [sic]" in care of the same counsel who had previously written to BHA on LaSalle Bank's behalf.  Docket # 7-4 at 22-35.  Counsel wrote that the letter was "submitted to you as you are the owner" of the property.  Id. at 22.  Waldholz, through counsel, repeated the history described supra and also alleged that although she had requested restoration of the heat, electricity and water services following the fire, the owner had thus far refused to restore those services, denied any obligation to do so, and refused to provide alternative housing.  Id. at 26.  Waldholz recited therein various ongoing efforts by her in the

Boston Housing Court to force the owner to restore services.  Id. at 26-27; See also, Docket #7-4 at ¶¶ 44-53 (First Amended Complaint describing these efforts).

On or about February 17, 2009, ISD declared the building to be unfit for human habitation, noting that Waldholz's unit "has no water, no heat, electricity shut off," and ordered her to vacate the premises immediately.[6]  Docket # 7-4 at 59.  The February 17, 2009, Notice of Decision resulting from the January 27, 2009 Condemnation Hearing noted that the condemnation could nevertheless be lifted in the event that repairs were made and the property was brought into compliance with all codes.  Docket # 45-4 at 4-5.

On February 20, 2009, the Plaintiffs filed the above-entitled action with the Boston Housing Court (Civil Action 09-000162, her second case) alleging numerous causes of action against Wilshire arising from its failure to remedy described sanitary code violations and to restore heat, water and electrical services to the premises following the December, 2008 fire. Docket # 7 at 1.  On the same day, she moved to consolidate the case with her previous case, 09-cv-00017.[7]  Id.

On February 25, 2009, Wilshire's counsel responded to Waldholz's c. 93A demand letter. Docket # 7-4 at 61-71.  He did so on behalf of "LaSalle Bank as Trustee for the MLMI Trust Series 2006-MLNI [sic] as serviced by Wilshire Credit Corporation ('Wilshire')."  Id. at 61. Counsel took the position that although Wilshire (e.g., LaSalle, as represented in the letter by Wilshire) (see infra, at 9-14) owned the property, it was not Waldholz's landlord because no

---

[6]  The notice to vacate appears to be undated, but the "Condemnation Hearing 01/27/2009 Notice of Decision" is dated February 17, 2009.  Docket # 45-4 at 4-5.

[7]  The court did not act upon this motion prior to removal.

landlord-tenant relationship existed between her and the owner, and because Wilshire "did not accede to the lease agreement that existed with the former mortgagor." Id. at 61-62, 66.  Counsel asserted that Wilshire learned that Waldholz was occupying the property only after it instituted its summary process action. Id. at 62.  Counsel also recited that Wilshire was unable to repair the property after the fire because the City of Boston had not certified that the building was structurally sound and because it was unable to secure cooperation from the owners of the other units (one of whom is the co-defendant bank in this case). Id. at 66.

Wilshire removed the Complaint to this Court on March 14, 2011 (docketed as Civil Action No. 09-10375-PBS). Docket # 1.  On March 16, 2009, Waldholz filed an Amended Complaint in the State Court. See Docket # 7 at 1.[8]  Waldholz subsequently sought and received permission to amend her complaint in the federal case, an amendment which destroyed diversity and resulted in the remand of the case to the Boston Housing Court on April 14, 2009.  See 09-cv-10375, Electronic Order of April 13, 2009; 09-cv-10375, Docket # 24.  In the Amended Complaint, the Plaintiffs added Defendant U.S. Bank National Association.  Docket # 7-4.  She alleged that the owners and trustee of Unit 2 did not make reasonable efforts to make repairs in accordance with their legal obligations to do so.  Docket # 7-4 at ¶¶ 61-62.

On April 28, 2009, Wilshire joined ISD in a motion to deem ISD's existing enforcement actions in the Boston Housing Court to be civil actions.  Docket # 45–4.  Those two actions had been entitled, Inspectional Services Department of the City of Boston v. Wilshire Credit Corporation as Servicer for LaSalle Bank, N.A. as Trustee for the MLM1 Trust Series 2006-

---

[8]  Although the action had already been removed, the State Court Record had not yet been assembled and transmitted to this Court.

MLN1.  Id. at 1.  Wilshire stipulated (as servicer for LaSalle Bank), that it owned and controlled Unit 1 as well as a proportionate share of the common areas of the three-family dwelling.  Id. The two resulting civil actions appear to have been captioned, Inspectional Services Department, City of Boston v. Jay Memmott, President, Wilshire Credit Corporation as Attorney in Fact for LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-MLN1.  Docket # 45-5 at 1.  In a stipulation dated June 5, 2009, Wilshire as attorney in fact for LaSalle Bank stipulated, inter alia, that "Wilshire owns Unit 1 of the Building," and that it had purchased the unit at a foreclosure sale.  Id.  It also stipulated that "Wilshire must repair the unit to remedy the violations of the State Sanitary Code" previously identified by ISD.  Id. at 2.  Wilshire agreed that it (or its successors in interest or subsequent purchasers) would be responsible for remedying the code violations by September 4, 2009.  Id.  This stipulation also provided that the case caption would be amended to identify the Defendant as "Wilshire Credit Corporation as Attorney in Fact for LaSalle Bank, N.A. as Trustee for the MLMI Trust Series 2006-MLN1."  Id.

LaSalle Bank sold Unit 1 on July 15, 2009.  Docket # 38 at ¶ 18.

After significant further litigation of Waldholz's Complaint in state court, the state court on February 9, 2011, dismissed the Massachusetts defendants for lack of service.  Docket # 1-7. With diversity thus restored, Defendant BAC Home Loans Servicing, L.P. (Bank of America's predecessor as successor to Wilshire) again removed the action to this Court on March 14, 2011. Docket # 1.

Presently pending are a variety of claims against the defendant entities arising from their alleged mismanagement of the property, resulting in unsafe conditions and collateral consequences to Waldholz and her children.  Also, in answer to the First Amended Complaint,

"Wilshire Credit Corporation as attorney in fact for LaSalle Bank N.A., as Trustee for the MLMI Trust Series 2006-MLN1" asserted a counterclaim against Waldholz seeking payment for her use and occupation of the property apartment from April 24, 2008 to July 15, 2009.  Docket # 45-3.

DISCUSSION

### Bank of America's Motion for Summary Judgment (Docket # 35)

Bank of America, as Wilshire's successor, moves pursuant to Fed. R. Civ. P. 56 for summary judgment, asserting that there are no genuine disputes of material fact, and that it is entitled to judgment as a matter of law.  Docket # 35.   Specifically, it asserts that Waldholz' claims are claims that lie only against the owner of the property and that it is not the owner.

#### Standard of Review

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.  56(a).   Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  Moreover, the Court  is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993).  Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009).

Analysis

Bank of America contends that its predecessor Wilshire was merely the loan servicer and not the owner of Waldholz's unit, and that Bank of America is therefore not a proper defendant. In particular, Bank of America points out that only a landlord could be liable on Count I (Breach of the Warranty of Habitability), Count II (Breach of the Right to Quiet Enjoyment) or Count III (Retaliation). Docket # 37 at 8-11. Similarly, it asserts that Count IV (for violation of anti-discrimination statutes) can apply only to an owner. Id. at 11-12. With respect to the claims for emotional distress in Counts V to VIII, Bank of America argues that "Plaintiffs allege their emotional distress claims against Wilshire as if it owned the Property." Id. at 13-14. With respect to the negligence claims in Counts IX to XII, Bank of America asserts that Wilshire did not owe a duty of care to the Plaintiffs "because Wilshire did not own the Property and Wilshire was not Plaintiff's landlord" and because as loan servicer, it did not cause the conditions alleged Id. at 14-15. Finally, it asserts that the M.G.L. 93A claim is a derivative claim, and fails because each of the other claims fails for the reason that Wilshire did not own the property. Id. at 16-17.

Bank of America (as successor to Wilshire) was indeed not the owner of the property. The Foreclosure Deed establishes that at all relevant times, LaSalle Bank, N.A. was the owner.[9] Docket # 35-6. Moreover, at the motion hearing, Waldholz's counsel conceded that Waldholz is

---

[9] While Waldholz opposed the motion in its papers by citing various Wilshire and Bank of America statements asserting ownership over the property, the Court finds this argument unpersuasive. Wilshire made each statement in the context of serving as LaSalle Bank's attorney in fact. Waldholz's counsel conceded as much at the hearing and agreed that it was his contention that Bank of America is here as LaSalle Bank's representative rather than the true owner of the property and so (in the face of the undisputed deed) the Court need not reach the question of whether these statements could even create a genuine issue of material fact on the question of the identity of the owner of the property.

not seeking a judgment that runs against Bank of America (as Wilshire's successor).

Nevertheless, the Foreclosure Deed combined with Waldholz's counsel's concession mark the

beginning, rather than the end, of the analysis of Bank of America's motion.  Waldholz contends

that Bank of America appears in this case as the attorney in fact for LaSalle Bank – thus binding

LaSalle Bank to any judgment obtained against Bank of America (as successor to LaSalle Bank's

attorney in fact, Wilshire).  Waldholz's analysis is persuasive.  The following undisputed facts

and relevant considerations inform my recommendation:

- Wilshire (appearing in this case as LaSalle Bank's attorney in fact) asserted a

counterclaim against Waldholz' for her use of the property;

- Counsel for Bank of America conceded that LaSalle Bank (or its successors), as former

owner of the property, would receive the benefit of any judgment on that counterclaim, as

opposed to Bank of America (as Wilshire's successor);

-Wilshire, as attorney-in-fact for LaSalle Bank, has: managed (or allegedly mismanged)

the unit; instituted foreclosure proceedings; commenced an eviction proceeding in Housing Court;

appeared as the defendant in code violation proceedings in Housing Court; settled these same

code violation proceedings by agreeing to make repairs to the property; responded to Waldholz's

93A letter for the owner;

- The claims asserted by Waldholz are all claims that lie only against the owner of the

property, yet able counsel on Wilshire's behalf never during the years of litigation preceding the

pending motion argued that Wilshire is the wrong defendant (even though Wilshire filed a motion

to dismiss the First Amended Complaint asserting various other grounds) (see Docket # 7-8);

- Waldholz's counsel conceded at the hearing that any judgment she obtains on her claims

11

binds LaSalle Bank, and not Wilshire or its successor.

After the hearing, Bank of America submitted a "Limited Power of Attorney" granted by LaSalle to Wilshire. Docket #64 at 5-6.[10] This document "gives Wilshire Credit Corporation full power and authority to execute such instruments and to do and perform all and every act and thing necessary and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully as the undersigned [LaSalle] might or could do." Docket #64 at 6. The powers granted relate to the mortgages for which Wilshire acts as servicer. The Limited Power of Attorney "does not authorize Wilshire Credit Corporation as Servicer, without further specific written consent from Trustee, to (I) hire or procure counsel to represent the Trustee in litigation matters <u>other than to enforce or protect the Trustee's interest in Mortgage Loans, Mortgaged Properties and/or REO Property</u> . . ." <u>Id.</u> at 5 (emphasis added). All of the litigation discussed above in which Wilshire acted (including this case) concerns enforcement of or protection of the Trustee's interest in the Mortgaged Properties.[11]

In addition, a separate independent reason also supports my recommendation, judicial estoppel. Judicial estoppel is an equitable doctrine that "prevents a litigant from pressing a claim that is inconsistent with a position taken by that litigant either in a prior legal proceeding or in an

---

[10]  At the hearing, the Court explained the foregoing analysis of the various roles of Wilshire and invited the parties to submit any further documents relevant to this issue.

[11]  Bank of America points to a brief ruling by the state court prohibiting Waldholz from amending her complaint by adding Bank of America as the successor by merger to LaSalle Bank.  <u>See</u> Docket # 35-1.  The record appears to suggest that Waldholz's motion referred to the wrong LaSalle bank entity (LaSalle Corp. rather than LaSalle Bank, N.A.).  <u>Id.</u> at 3.  Moreover, that the Waldholz sought to protect herself by also joining Bank of America in its role as LaSalle Bank's successor by merger does not mean that Bank of America is not here as successor to Wilshire, LaSalle's attorney in fact.

earlier phase of the same legal proceeding." <u>Boston Gas Co. v. Century Indem. Co.</u>, 708 F.3d 254,

261 (1st Cir.2013) (quoting <u>InterGen N.V. v. Grina</u>, 344 F.3d 134, 144 (1st Cir.2003). The

doctrine's primary purpose is "to protect the integrity of the judicial process." <u>New Hampshire v.</u>

<u>Maine</u>, 532 U.S. 742, 749 (2001). The First Circuit has held that two conditions must be satisfied

for the doctrine to attach: "First, the estopping position and the estopped position must be directly

inconsistent, that is, mutually exclusive." <u>Id.</u> (quoting <u>Alternative Sys. Concepts, Inc. v.</u>

<u>Synopsys, Inc.</u>, 374 F.3d 23, 33 (1st Cir.2004)). Second, "the responsible party must have

succeeded in persuading a court to accept its prior position." <u>Id.</u>

     Here there is no doubt that should Bank of America contend that as Wilshire's successor,

it does not represent the interests of LaSalle Bank, that position is directly inconsistent with the

positions that Wilshire has taken in the past, both in its counterclaim in this proceeding, and in

stipulations in the Boston Housing Court in related litigation concerning the Waldholz tenancy in

Unit 1. Moreover, Wilshire resolved those Housing Court actions by means of stipulations in

which it represented to the Court that it was acting as the representative of the owner of the unit

and had the responsibility and ability to undertake remedies such as those which are at issue in

this case. Accordingly, the Court finds that Bank of America is estopped from arguing that as

Wilshire's successor, it does not represent LaSalle Bank, N.A.

     For these reasons, I conclude that Bank of America, as Wilshire's successor,[12] does not

own the property and is not responsible for any judgment resulting from this case. To that extent,

---

    [12] The formulation in the text is intentional. Bank of America does not own the property as successor to Wilshire. However, a submission by Bank of America indicates that LaSalle Bank, National Association owned LaSalle Bank Corporation and that the former entity merged into "Bank of America, National Association." Docket 37-43 at ¶¶ 23-25.

I RECOMMEND that the Court ALLOW IN PART Bank of America's Motion for Summary

Judgment.  However, I also conclude that Bank of America (as Wilshire's successor) serves in

this case as LaSalle Bank's attorney-in-fact and appears here as LaSalle Banks's representative,

with any judgment that should enter being binding upon LaSalle Bank.  To that extent, I

recommend that the Court DENY IN PART Bank of America's motion.

Waldholz has filed a Cross-Motion for Summary Judgment raising the ownership issue.  I

RECOMMEND the same resolution. Insofar as Waldholz seeks a determination that Bank of

America, as Wilshire's successor, owned the property, I RECOMMEND that the Court DENY

the Motion.  However, insofar as Waldholz seeks a determination that Bank of America serves in

this case as LaSalle's attorney in fact and appears as LaSalle's representative, I RECOMMEND

that the Court ALLOW the motion.

In light of my Recommendation, resolution of Waldholz's Motion to Strike Bank of

America's Requests for Admissions (or alternatively to file late responses) has no bearing on the

resolution of the summary judgment motion.  However, in the interests of completeness, I have

rendered a Recommendation on this motion (see infra, at 19-22) so that the Court would have it in

the event that it took a different view of the Bank of America motion.

### U.S. Bank National Association's Motion to Dismiss

Defendant U.S. Bank National Association moves pursuant to Fed. R. Civ. P. 12(b)(6) to

dismiss the remaining counts of the First Amended Complaint[13] directed against it (for negligence

---

[13] On February 23, 2013, the Plaintiff moved for permission to filed a Second Amended
Complaint.  Docket # 13.  On June 27, 2012, the Court allowed that motion.  Docket # 28.  No
Second Amended Complaint, however, was subsequently filed.  Accordingly, U.S. National
Bank Association's motion seeks to dismiss the First Amended Complaint (Docket # 7-4), which
remains the operative complaint.  In any event, Waldholz's proposed amendment added a claim

and intentional infliction of emotional distress) as failing to state a claim upon which relief may be granted.  Docket # 49.

Standard of Review

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The court "must accept all well-pleaded facts alleged in the Complaint as true and draw all reasonable inferences in favor of the plaintiff." Watterson v. Page, 987 F.2d 1, 3 (1st Cir.1993). This "highly deferential" standard of review "does not mean, however, that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized." United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir.1992).  Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir.1997)(quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir.1988) (internal quotation marks omitted). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Iqbal, 556 U.S. at 678.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Id.  The Court's assessment of the pleadings is "context-specific," requiring "the reviewing court to draw on its judicial experience and common sense." Maldonado v. Fontanes, 568 F.3d 263, 269 (1st

directed solely against defendant Bank of America, and thus the discrepancy is not germane to the pending motion.

Cir.2009)(quoting <u>Iqbal</u>, 556 U.S. at 663-64). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief." <u>Id.</u>

<u>Intentional Infliction of Emotional Distress (Counts Five to Eight)</u>

In the First Amended Complaint, Waldholz brings claims against U.S. Bank for Intentional Infliction of Emotional Distress on behalf of each of the Plaintiffs (Counts Five through Eight).  Docket # 7-4 at ¶¶ 99-106.  U.S. Bank moves to dismiss those counts to the extent directed against it as not stating a claim upon which relief may be granted because it asserts that the allegations against U.S. Bank describe conduct which is insufficiently extreme or outrageous to support liability.  Docket # 50 at 7-9.

To successfully make out a claim of intentional infliction of emotional distress, a plaintiff must show that (1) the defendant "intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct"; (2) "that the conduct was 'extreme and outrageous' "; (3) "that the actions of the defendant were the cause of the plaintiff's distress"; and (4) "that the emotional distress sustained by the plaintiff was [so] severe . . . that no reasonable man could be expected to endure it." <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140, 145 (1976).  It is not enough that a defendant acts with tortious, or even criminal, intent, but rather "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." <u>Foley v. Polaroid Corp.</u>, 400 Mass. 82, 99 (1987) (quoting <u>Restatement (Second) of Torts</u> § 46).  US Bank argues that the First Amended Complaint cannot make out such a claim, given that the wrongdoing alleged is

16

overwhelmingly that of another entity that was the Plaintiffs' landlord.

Taking the facts of alleged in the First Amended Complaint in the light most favorable to the Plaintiff, the disputed counts state claims against U.S. Bank for intentional infliction of emotional distress.  The Plaintiffs allege that a leak in the unit owned by U.S. Bank caused a failure of the heating system in the Plaintiff's unit.  See, Docket # 7-4 at ¶ 22; Id. at 28 (Wilshire's Answer and Counterclaim,[14] "[d]uring the fall of 2008, the leak from Unit 2's pipe caused substantial and recurring water damage to the heating system and electrical system for Unit 1 . . . [t]he repeated failures of the heating system in Unit 1 are the direct result of the leak in the pipe in Unit 2, the unit then-owned by U.S. Bank").  The Plaintiffs allege that after the fire, U.S. Bank did not remedy problems in the common areas for which it was jointly responsible (including a lack of electrical and water service to the entire building, a hole in the roof and a flooded basement), all of which the Plaintiffs allege made the building uninhabitable and forced them to live in emergency shelter.  Id. at ¶¶ 61-62;  See, Simon v. Solomon, 385 Mass. 91, 97 (1982) (jury could conclude that landlord's pattern of indifference as evidenced by its failure to fix porous wall, leading to flooding, was outrageous and beyond all possible bounds of decency).  Moreover, U.S. Bank itself attaches as an exhibit to its motion the applicable Declaration of Trust, which it concedes states that the trustees have the power and duty to operate and maintain the common areas of the building.  See Docket # 50 at 3 (citing Docket # 50-3).  Wilshire's response to the 93A letter (incorporated into the First Amended Complaint as an exhibit)

---

[14]  These statements of Wilshire are made within an exhibit to the First Amended Complaint.

indicates that Wilshire blamed its failure to restore heat, water and electrical service in part upon a lack of cooperation from the other owners.  Docket # 7-4 at 66.

On a motion to dismiss, the allegation that U.S. Bank failed to make promptly necessary repairs to a property it owned in order to restore heat, water and electrical service (causing a family to remain in emergency shelter) suffice to state a claim for intentional infliction of emotional distress.

### Negligence (Counts Nine to Twelve)

In the First Amended Complaint, Waldholz also brings claims against U.S. Bank for Negligence on behalf of each of the Plaintiffs (Counts Nine through Twelve).  Docket # 7-4 at ¶¶ 127-53. U.S. Bank also moves to dismiss those counts to the extent directed against it as not stating a claim upon which relief may be granted because Waldholz has failed to adequately plead causation.  Docket # 50 at 9-11.

U.S. Bank asserts that the allegations "create no causal link to the plaintiff's loss of heat, hot water, and electricity" and that the First Amended Complaint lacks "even a slight indication of the link between allegedly negligent conduct by U.S. Bank and the plaintiff's injuries."  Id. at 11.  The Court disagrees.  The First Amended Complaint alleges that U.S. Bank had the power and duty as Trustee to operate and maintain the common areas of the building, that the common electrical metering was "cross metered" so that the Plaintiffs were billed inappropriately and that U.S. Bank failed (as did her landlord) to undertake emergency repairs when the heat, water and electricity to the entire building were terminated.  See Docket # 7-4 at ¶¶ 20, 22, 38-40, 61-62.  Moreover, the Plaintiffs allege that Wilshire, as representative of the owner of Plaintiff's unit, asserted that a failure of the heating unit arose due to U.S. Bank's failure to detect and repair a

leak in the unit above Plaintiff's unit (owned by U.S. Bank).  The Plaintiffs have succeeded in plausibly pleading that negligence of U.S. Bank caused damages to them.

Accordingly, I RECOMMEND that the Court DENY Defendant U.S. Bank National Association's Motion to Dismiss (Docket # 49).

### Waldholz's Motion to Strike or Amend Bank of America's Request for Admissions (Docket # 46)

Whether allowed or denied, Waldholz's Motion to Strike Request for Admissions (or to permit her late responses) has no effect upon my Recommendation to the Court with respect to Bank of America's Motion for Summary Judgment, as the record is clear that LaSalle Bank, N.A. owned the property.  However, in the event that the Court takes a different view of the summary judgment motion, perhaps the Motion to Strike would then bear upon the dispositive motion. Accordingly, I include herein my Recommendation with respect to Waldholz's Motion to Strike.

On May 18, 2010, counsel for Bank of America sent to the Plaintiff's counsel Requests for Admission pursuant to Mass. R. Civ. Pr. 36.  See Docket #47-2; Docket # 35-3.[15]  Rule 36 provides in relevant part that:

> A party may serve upon any other party a written request for admission, for purposes of the pending action, only, of the truth of any matters within the scope of Rule 26(b) set forth in the request that relate to statements or opinions of fact or of the application of law to fact . . . [t]he matter is admitted unless, within 30 days after service of the request . . .  the party to whom the request is directed serves upon the party requesting the admission either (1) a written statement signed by the party under the penalties of perjury specifically (I) denying the matter or (ii) setting forth in detail why the answering party cannot truthfully admit or deny the matter; or (2) a written objection addressed to the matter, signed by the party or his attorney.

---

[15]  At that time, the case was pending before the Boston Housing Court.  See Docket # 37 at 7 n. 22.

19

Mass. R. Civ. P. 36(a).[16]

By rule, then, Waldholz's responses to the Requests were due by June 21, 2010.  As of

February 21, 2013 (when Bank of America filed its motion for summary judgment), Waldholz

had made no response to the Requests for Admissions.  Docket # 35-10 at ¶ 6.  Thus, pursuant to

Fed.R.Civ.P. 36(a) and Mass.R.Civ.P. 36(a), the requests are ordinarily deemed admitted,

although the responding party may on motion seek relief from the effect of those admissions.  See

Mass. R. Civ. P. 36(b) ("Any matter admitted under this rule is conclusively established unless

the court on motion permits withdrawal or amendment of the admission").  Similarly, the federal

rule permits admissions to be withdrawn or amended, on motion, "if it would promote the

presentation of the merits of the action and if the court is not persuaded that it would prejudice the

requesting party in maintaining or defending the action on the merits."  Fed. R. Civ. P. 36(b).

The First Circuit has held that in analyzing the propriety of permitting amendment or

withdrawal of admissions, courts should be guided by the purposes of  Rule 36 "as explicated by

the advisory committee's note: '[p]rovision is made for withdrawal or amendment of an

admission. This provision emphasizes the importance of having the action resolved on the merits,

while at the same time assuring each party that justified reliance on an admission in preparation

for trial will not operate to his prejudice.'"  Farr Man & Co., Inc. v. M/V Rozita, 903 F.2d 871,

876 (1st Cir.1990).

"The prejudice contemplated by the Rule is not simply that the party who initially

obtained the admission will now have to convince the fact finder of its truth.  Rather, it relates to

the difficulty a party may face in proving its case, e.g., caused by the unavailability of key

---

[16]  Fed. R. Civ. P. 36(a)(3) includes the same provisions.

witnesses, because of the sudden need to obtain evidence with respect to the questions previously

answered by the admission." Id. (quoting Brook Village North Assocs. v. General Elec. Co., 686

F.2d 66, 70 (1st Cir.1982)).

Under these circumstances, the Court is persuaded that permitting Waldholz to amend by

deeming Docket # 47-1 to constitute her answers to Bank of America's requests for admissions

both promotes the presentation of the merits of the action, and will not prejudice Bank of

America.

The pleadings of all parties make clear that the issue of the ownership of Waldholz's unit

is central to the case.  See, e.g., Docket # 52 at 4 (Bank of America's opposition to Waldholz's

Motion) ("[t]he merits of Plaintiffs' claims, Bank of America's defenses, and Bank of America's

motion for summary judgment, turn on issues of ownership of the Property, the

Plaintiffs' tenancy, the Plaintiffs' landlord, and what caused the Plaintiffs to vacate the

Property.  Each of the Plaintiffs' admissions listed above addresses these issues").  The just

determination of this action is best served by reaching these issues on the merits.  See also Fed. R.

Civ. P. 1. (These rules . . . should be construed and administered to secure the just, speedy, and

inexpensive determination of every action and proceeding).  The prejudice identified by Bank of

America as accruing to it should an amendment be permitted ("Bank of America would be

prejudiced by an allowance of Plaintiffs' motion because it would have to serve further written

discovery and dedicate a portion of a deposition examination to issues that are conclusively

admitted") is precisely the sort of prejudice which the First Circuit has held is not contemplated

by Rule 36 (i.e., that Bank of America, despite having previously obtained the admissions, will

now have to convince the fact finder of their truth).  See, supra at 4.  Bank of America has not

alleged that it would be unable to make its case due to subsequent availability of witnesses, etc. Waldholz's request for amendment was made while fact discovery was still ongoing.

Moreover, Waldholz's counsel has asserted (and Bank of America's counsel has not disputed in its opposition to her motion) that the issue of the unanswered admissions had not been raised between counsel in the more than two years prior to the filing of the motion for summary judgment.  See Docket # 47 at 3; Docket #52.  Finally, because the Court concludes that the distinction drawn by Bank of America between Wilshire and LaSalle Bank in its summary judgment motion is not of significance to the case in the sense that Bank of America urges (see supra at 9-14), the prejudice to Bank of America would be significantly reduced in the event that the Court adopts the Report and Recommendation.

Accordingly, I RECOMMEND that the Court ALLOW Waldholz's motion by deeming Docket # 47-1 to constitute her responses to Bank of America's Requests for Admissions, and otherwise DENY her motion.

CONCLUSION

For the foregoing reasons, I RECOMMEND that the Court: (1) ALLOW IN PART and DENY in PART Bank of America's Motion for Summary Judgment (Docket # 35); (2) ALLOW IN PART and DENY IN PART the Plaintiffs' Cross Motion for Summary Judgment (Docket # 42); (3) DENY U.S. Bank National Association's Motion to Dismiss (Docket # 49); and (4) ALLOW IN PART the Plaintiff's Motion to Strike or Amend (Docket # 46) as described supra and otherwise DENY it.[17]

        /s / Leo T. Sorokin
Chief United States Magistrate Judge

---

[17] The Parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation. The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b). The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).